[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12577

_____

JULIA MCCREIGHT,
REBECCA WESTER,

                                        Plaintiffs-Appellants,

*versus*

AUBURNBANK,
AUBURN NATIONAL BANCORPORATION, INC.,
MICHAEL KING,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 3:19-cv-00865-RAH-SMD

————————————————

Before GRANT, ABUDU, and HULL, Circuit Judges.

GRANT, Circuit Judge:

Title VII prohibits employers from intentionally discriminating against their employees based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). That seems simple enough. But it has not turned out to be; employment discrimination law has grown into a tangle of doctrines, tests, and claim types. We are doing our best to clear a path. In recent cases we have explained that the *McDonnell Douglas* order of proof and what we have called the "convincing mosaic" approach are just two ways to meet the same summary judgment standard: enough evidence for a reasonable jury to conclude that illegal discrimination occurred. *See Tynes v. Florida Dep't of Juv. Just.*, 88 F.4th 939, 943–47 (11th Cir. 2023); *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023); *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023).

Here we clear up two other strands of our case law: sex-plus claims and mixed-motive theories of liability. These terms mean different things. A sex-plus claim is based on one kind of discrimination—sex discrimination—targeting one subclass of a sex. Black women and mothers are subcategories of women that have been recognized. So too for older women, the relevant category here.

Mixed-motive discrimination, on the other hand, allows for liability when an employment decision motivated by a *legitimate* reason—usually poor work performance—is also infected by an *illegitimate* reason—illegal discrimination. So mixed-motive is not a theory that more than one illegal motive was at play. Nor is it the same thing as a "sex-plus" claim. Indeed, because mixed-motive discrimination is a theory of liability, not a type of claim, it need not be alleged in the complaint to survive; raising a mixed-motive argument by summary judgment offers notice to defendants about what to defend, and to courts about what to decide.

Plaintiff Julia McCreight raised a sex-plus discrimination claim, but she did not offer enough evidence for a reasonable jury to conclude that her boss fired her because of her sex. We therefore affirm summary judgment for the defendants on the sex discrimination claim. McCreight and co-plaintiff Rebecca Wester's age discrimination claims fail for the same reason—neither woman offered enough evidence for a reasonable jury to conclude that she was fired because of her age. And because both women failed to offer evidence, rather than speculation, that their supervisors knew about their age or sex discrimination complaints, their retaliation claims also fail.

## I.

AuburnBank is a loan originator. Most of the time, it acts as a "seller servicer" for Fannie Mae, meaning that it sells loans to

Fannie Mae while maintaining the servicing rights.[1]  AuburnBank prefers acting as a seller servicer because that role in the market carries the lowest risk.  A smaller part of AuburnBank's business is originating loans that it sells to other secondary market investors. For these loans, AuburnBank sells both the loan and its servicing rights to a third party.  Finally, AuburnBank originates a certain number of in-house loans, retaining both the loan and its servicing rights.

Fannie Mae requires that loan applicants meet certain qualifications.  To ensure that these conditions are met, AuburnBank requires a number of steps, starting with prequalification.  This duty falls to mortgage loan originators, who prequalify applicants based on unverified information that would-be borrowers provide.  If everything looks appropriate, the bank will send a confirmation letter informing the applicant that she is prequalified.  But mortgage loan originators are not authorized to formally approve any applicants for a loan—that responsibility falls to underwriters, who independently vet applicants.  If an underwriter concludes that a prospective borrower is unqualified for a Fannie Mae loan, the bank has two choices: it can deny the applicant entirely or approve a much riskier in-house loan. Regardless of which type of loan the bank approves, would-be

---

[1] As a loan originator, AuburnBank assesses and approves mortgage loan applications, and then will sell those loans to other investors in what is known as the secondary market.  Fannie Mae is a secondary market purchaser, meaning that it buys loans already approved by lenders like AuburnBank.

borrowers need to satisfy other conditions before closing. This way, the bank can pull the loan if the applicant's financial picture changes right before the closing date.

Each part of this process can spell disaster for a bank's bottom line if not handled properly: loans approved for borrowers who fail to meet the standards of secondary market purchasers like Fannie Mae are dramatically riskier. AuburnBank's disciplinary policy reflected the reality that some mistakes are worse than others. It generally provided for termination after three formal warnings, but immediate termination was possible if an employee committed a serious offense.

McCreight and Wester were fired after committing serious errors in the loan-approval process. McCreight worked as a mortgage loan originator, and Wester as a loan closer. Both women had been employees of AuburnBank for more than twenty years and were over sixty years old when they were fired. They were ultimately fired by Michael King, who had been hired as the mortgage department manager to grow and revitalize the department.

As a mortgage loan originator, McCreight's job duties included originating loans for the bank and prequalifying applicants based on the (unverified) information they provided. But in the incident that precipitated her firing, instead of prequalifying a prospective borrower, McCreight sent him a letter announcing that his loan had been approved. The problem was that the borrower did not really qualify for the loan, which was

denied by the underwriter who later reviewed it. But because of McCreight's approval letter, AuburnBank was still contractually bound to issue the loan, which it could not sell to Fannie Mae. This error left the bank with a much riskier loan, exposing it to a risk of default.

The confusion arose because McCreight had used an outdated standard letter, one that a supervisor had instructed her to stop using. McCreight claims she was never told about the new version, but she received an email discussing the new letter and attaching a copy of it. McCreight also claims that her supervisor gave her permission to continue using the old letter, which the supervisor denies.

This was not the first time McCreight had committed a serious error. For one, she created a potential conflict of interest by being inappropriately involved in one of her family member's loans. She also attempted to change an already locked-in interest rate for a different borrower; had she succeeded, the loan would have been unsellable to Fannie Mae. Her unauthorized approval of the unqualified borrower was the "final straw" for King.

Like McCreight, Wester was fired after the last of a series of errors. For her, it was failing to verify the employment of a loan applicant within ten days before closing. Wester was out of the office for a medical procedure the Friday before the loan closed. Though she could have performed the employment check earlier in the week, she failed to do so. After closing was complete, she learned that the borrower no longer had a job. But because the

loan had already closed, the bank was stuck with it.  Wester says that she had asked colleagues to take care of it while she was out, but she offers no explanation for not doing it herself before her procedure.  And this was not the first time.  In fact, she had already been placed on a ninety-day probation for failing to complete her work promptly.   This failure to verify employment was the breaking point for the bank, and with King's approval Wester was fired by one of her supervisors.

McCreight and Wester see their terminations differently. Both contend that AuburnBank and King fired them because they were older women and in retaliation for their complaints to human resources.  King, they point out, terminated four women over the age of forty, transferred two women, hired and promoted one woman under forty, and hired five men—all within two years. Meanwhile, no men were fired or transferred.  And according to McCreight, King "said he had come to clean house" and wanted to "hire younger MLOs"; he once added that McCreight had "been here forever."

McCreight complained to Laura Carrington, Vice President of Human Resources, claiming that King was spreading false rumors that she sued the bank, and decrying what she saw as his negative treatment of older women.  She says she also made similar complaints to AuburnBank's president and vice president, but they dispute that contention.  Wester also informally complained to Carrington twice about the hostile work environment in the mortgage department.  For her part, Carrington says that she spoke

with King, but only about McCreight's complaints about him spreading rumors; Carrington says she did not share McCreight's complaints of discrimination, and she denies sharing any of Wester's complaints with King.

McCreight and Wester sued, raising a wide range of state and federal claims: sex-plus-age discrimination under Title VII; age discrimination in violation of the Age Discrimination in Employment Act and the Alabama Age Discrimination in Employment Act; retaliation under both Title VII and the ADEA/AADEA; hostile work environment under Title VII and the ADEA/AADEA; and a variety of state tort claims including false light invasion of privacy and negligent retention/supervision. The district court granted summary judgment for AuburnBank and King on all counts. McCreight and Wester now appeal only their ADEA and AADEA discrimination claims, their retaliation claims, and McCreight's Title VII sex-plus-age discrimination claim.

## II.

We review de novo a district court's grant of summary judgment, "viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty.*

*Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (alteration adopted and quotation omitted).

### III.

We begin by addressing McCreight's sex discrimination claim. McCreight says that because she has articulated a sex-plus claim, it should be analyzed under a "mixed-motive" theory. This is incorrect. To start, a sex-plus claim is not, as McCreight seems to think, a claim based on "more than one type of discrimination causing the adverse action." It is a claim based on one kind of discrimination—sex discrimination—within a particular subgroup of people.

What's more, McCreight misunderstands the nature of a mixed-motive theory, which allows for Title VII liability when an adverse employment action is motivated by some combination of legitimate and illegitimate reasons. *See* 42 U.S.C. § 2000e-2(m). A mixed-motive theory is *not* another way of referring to a sex-plus claim or a theory that more than one illegal motive was at play. In short, sex-plus-age is a type of employment discrimination claim a plaintiff can bring, and mixed-motive is a theory of causation that a plaintiff can rely on to support that claim.

McCreight is correct, however, that a district court should not dismiss a mixed-motive theory as a failure of a complaint's pleading. Because mixed-motive discrimination is a theory of liability, rather than a type of claim, it need not be alleged in the complaint to survive. But that does not revive her claim. She did not argue a mixed-motive theory *at all* at the district court level—

not at summary judgment and not at any time. We therefore affirm the grant of summary judgment against McCreight on her sex discrimination claim because she did not raise a mixed-motive theory, and she did not adequately support her single-motive theory.

## A.

Title VII, as we have said, prohibits employment discrimination based on a variety of protected characteristics. 42 U.S.C. § 2000e-2(a)(1). Here, the relevant category is sex. An archetypal way to prove sex discrimination under Title VII is to show an employer treating an employee of one sex differently than employees of the other sex.

Also cognizable under Title VII are "sex-plus" discrimination claims. *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1033 (5th Cir. 1980).[2] In these cases, the employer does not discriminate against all women (or men) but rather treats a subgroup of women (or men) differently. *Id.* at 1033–34. The "plus" refers to nonsex factors that create the subgroup in which the sex discrimination occurs. Singling out only one subgroup of a sex for discriminatory treatment thus does not insulate an employer from liability. *Id.* at 1034. Otherwise, an employer could "escape violations of Title VII

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit "as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date" are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

by adding nonsex factors in creating discriminatory policies." *Harper v. Thiokol Chem. Corp.*, 619 F.2d 489, 492 (5th Cir. 1980). Sex discrimination, in short, does not require that an employer discriminate against everyone of a particular sex—Title VII comes into play even when only a subgroup of employees is treated differently based on their sex.

This conclusion is not a new one. We have said that employers "may not apply different standards of treatment to women with young children, to married women, or to women who are single and pregnant." *Jefferies*, 615 F.2d at 1034. The same goes for sex discrimination claims when an employer treats black female employees differently from black male employees; those claims too are cognizable under Title VII. *Id.*[3] All of these claims allege sex discrimination within a particular subgroup, which is defined by the "plus" factors.

Sex-plus-age claims likewise have been recognized by this Court. *See Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1348 (11th Cir. 2007). In a sex-plus-age case, the basis for the alleged discrimination is *sex*; the *age* factor's work is in defining the subgroup in which the alleged sex discrimination occurred.[4]

---

[3] *Jefferies* held that an employer violated Title VII by discriminating against black women—the fact that the employer did not discriminate against black males or white females was irrelevant. 615 F.2d at 1034.

[4] Some courts have approved sex-plus-age claims because they see them as based on a negative sex-based stereotype. *See, e.g.*, *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048–49 (10th Cir. 2020). But though such

The bottom line is this: because sex-plus-age claims allege disparate treatment on the basis of sex, they fall within Title VII. And just like any other discrimination claim, sex-plus-age claims can be supported through either a single- or mixed-motive theory, which we discuss next.

**B.**

Title VII offers plaintiffs two theories of discrimination: single-motive and mixed-motive. Under a single-motive theory, a plaintiff "must prove that the 'true reason' for an adverse action was illegal" bias. *Quigg*, 814 F.3d at 1235, 1237. In other words, we ask whether illegal discrimination was the but-for cause of the employee's firing, with the protected trait having "a determinative influence" in the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

For a mixed-motive theory, on the other hand, the employee contends that both legal and illegal reasons motivated her firing. *Quigg*, 814 F.3d at 1235, 1239. Under that theory the plaintiff argues that a "discriminatory input," like sex bias, factored into an employer's decision, even if other reasons justified it as well. *Id.* at 1241; *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 171 (2009); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003). So under a mixed-motive theory, a plaintiff need only show that an illegal reason

stereotypes may be the reason an employer targets a particular group, they are not the reason this discrimination is illegal. The fact that a group of people is being treated differently based on sex is the reason.

played a part in the decision—not that it had a dispositive role. *See Quigg*, 814 F.3d at 1238, 1241.

Single-motive and mixed-motive are not, we should be clear, distinct claim types. *Id.* at 1235 n.4. Instead, they offer alternative theories of causation for proving discrimination under Title VII. *Id.* And underlying both theories is the same summary judgment standard: whether a plaintiff has provided sufficient evidence for a reasonable jury to infer intentional discrimination. *See Tynes*, 88 F.4th at 943–47; *Quigg*, 814 F.3d at 1239–40.

Both theories also offer the same potential remedies, which include compensatory and punitive damages plus back pay and injunctive relief. 42 U.S.C. § 1981a(a)(1). But there is one important difference: if a plaintiff prevails under a mixed-motive theory, an employer can still avoid damages and certain equitable relief by showing that it would have taken the same action even without the illegal motivation. *Quigg*, 814 F.3d at 1242; 42 U.S.C. § 2000e-5(g)(2)(B). This affirmative defense is known as the mixed-motive or same-decision defense. *Desert Palace*, 539 U.S. at 94–95; *Quigg*, 814 F.3d at 1242.

While the same-decision defense restricts the plaintiff's remedies, it does not absolve the employer from liability—declaratory and injunctive relief, as well as attorney's fees, remain available. *Desert Palace*, 539 U.S. at 94–95; 42 U.S.C. § 2000e-5(g)(2)(B). And if an employer fails to assert, and prove, a same-decision defense, a plaintiff prevailing under a mixed-motive theory is entitled to recover the same damages and relief as would be

available under a single-motive theory.   42 U.S.C. §§ 2000e-2(a), 2000e-2(m), 1981a(a)(1).   This statutory framework—the single-motive theory, the mixed-motive theory, and the same-decision defense—confronts the reality that discrimination based on protected characteristics is illegal whether the employee is top-notch or not.   It also evinces Congress's intention to penalize employment discrimination whenever it occurs, without also tying the hands of employers who need to effectively manage their businesses.

That both single- and mixed-motive theories of liability are available does not mean a plaintiff is required to affirmatively plead one or the other at the outset of the case.[5]   The Federal Rules of Civil Procedure impose pleading requirements for claims, not theories of liability.  Fed. R. Civ. P. 8(a); *see Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014).   The single-or-mixed-motive question illustrates why; discovery is often necessary for a plaintiff to know which causation standard to pursue.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989), *superseded on other grounds by statute*, 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B).   Perhaps an employee will learn that, although discrimination played a role in her firing, it was not the only reason for it.

---

[5] We also made clear that defendants need not plead the same-decision defense as an affirmative defense.  *Pulliam v. Tallapoosa Cnty. Jail*, 185 F.3d 1182, 1185 (11th Cir. 1999).

That does not mean, however, that plaintiffs can simply allege facts and let the district court figure things out from there. We "rely on the parties to frame the issues" by "advancing the facts and arguments entitling them to relief." *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (quotations omitted). So a plaintiff wishing to "prevail on a particular theory of liability" must "present that argument to the district court." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011).

But when? So long as the factual basis is properly alleged, an employee can raise a mixed-motive theory of liability as late as summary judgment. What is important is not *when* the theory is raised, but whether the defendant has enough notice of it. To be sure, a district court may reject new theories of liability when they are raised alongside new factual allegations such that a change would "prejudice the other party in maintaining a defense upon the merits." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219 (4th ed. 2023). But without such prejudice, a theory of liability raised by a plaintiff cannot be rejected simply because she failed to specifically plead it in her complaint. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259–60 (11th Cir. 2015).

This notice requirement accomplishes several purposes. For one, it gives the employer notice about what it is defending against. For another, it gives the district court an understanding of what it needs to decide and based on what evidence. It would be remarkably unfair to both district courts and defendants—and

16                    Opinion of the Court                    22-12577

wasteful on top of that—to let plaintiffs on appeal spring new theories of liability that were not considered or defended against at summary judgment.[6]  This requirement also protects plaintiffs because maintaining a single-motive theory prevents employers from limiting the available remedies with the same-decision defense.

## C.

We now apply these points to the case before us.  McCreight brings a sex-plus-age discrimination claim under Title VII.  But she says that because her claim alleges two motives, sex and age, that also makes it an "intersectional" claim, which means it is a mixed-motive claim.    And for mixed-motive claims, she says, our evidentiary standard is lower, requiring only "bits and pieces" of evidence that could lead one to conclude that she was fired because of her age and sex.

Respectfully, that is not how this works.  We start with McCreight's incorrect assumption that a sex-plus claim is the same thing as a mixed-motive claim.  As we have explained, mixed-motive is a theory—not a claim.  So McCreight is right that she did

---

[6] To be sure, a mixed-motive theory of discrimination does not require an employee to affirmatively concede that there was a good and legal justification for the adverse employment action; most employees, like all human beings, may find it hard to believe that there was a good reason for their employer to act against them.  But the theory must be specifically raised, at least in the alternative.

not need to allege a mixed-motive theory in her complaint; all that she was required to allege was that an adverse employment action occurred based on some protected characteristic and the factual bases for her claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). She could then raise a mixed-motive theory of liability outside her complaint, so long as that theory was not based on new factual allegations and was raised before the district court by summary judgment.

The problem for McCreight's mixed-motive theory is that she did not raise it before the district court. A sex-plus-age claim, again, is a label for a sex discrimination claim targeting only a subset of a protected class. Mixed-motive discrimination is a completely different concept—a legal theory for an adverse action that had both legitimate and illegitimate motives. So a sex-plus-age claim (just like any other sex discrimination claim) can be supported with a single-motive or a mixed-motive theory.

It was up to McCreight to define the contours of her claim— and she chose single-motive. Though she cited a mixed-motive case, *Quigg*, that was not enough. *See generally Quigg*, 814 F.3d 1227. McCreight never argued, even in the alternative, that a mix of legitimate and illegitimate motives played a role in her firing; instead, she claimed that AuburnBank fired her because of her status as an older woman, and that any other reason the bank offered was pretextual. That is a classic single-motive approach.

So why did she cite *Quigg*? Perhaps because, as the district court suggested, she wrongly perceives the mixed-motive test as

18                  Opinion of the Court                22-12577

easier to prove.  As we will reiterate below, that is not the case. Mixed-motive theories of discrimination invoke a lessened standard of causation, not a diminished standard of proof. McCreight is correct that the *McDonnell Douglas* test has certain requirements in this Circuit that can be hard to meet.  Especially comparator evidence.  *See Lewis v. City of Union City (Lewis II)*, 934 F.3d 1169, 1185 (11th Cir. 2019).  But *all* Title VII claims—single-motive as well as mixed-motive—are ultimately decided according to the same Rule 56 summary judgment standard.  And that standard asks whether the employee has offered enough "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Tynes*, 88 F.4th at 946 (quotation omitted).  "Bits and pieces" of evidence, as McCreight puts it, are not enough, no matter which theory the plaintiff travels under.

But bits and pieces are all she offered.  Returning to the specifics of McCreight's sex discrimination claim, she relies on statements from other female employees alleging that King mistreated women, as well as alleged comments from King about hiring younger mortgage loan originators.  She also points to older male employees she says were treated more favorably than she was.[7]

---

[7] McCreight also provided statistics about the male-to-female makeup among mortgage loan originators before and after King's involvement.  But these statistics are not enough because they reflect only a small portion of the entire mortgage department that King oversaw.  While there is some evidence that King fired or transferred more older women than he did older men, that evidence is likewise insufficient because we do not know the gender composition

Missing from McCreight's evidence is any indication that sex played a role in *her* termination. The examples she provides about the treatment of older male employees do not suggest sex discrimination against her. One male employee improperly closed a loan such that it had to be converted to an in-house loan—but he, unlike McCreight, was a relatively new hire and had not been disciplined before (or after, as it turned out) for an unauthorized approval of a loan. The next also made costly mistakes—and he, like McCreight, was told to either resign or be terminated. And as for the third, McCreight's argument that AuburnBank responded more immediately to his complaints about age discrimination and a hostile work environment is not evidence of sex discrimination against her. *See Yelling*, 82 F.4th at 1343.

All that remains is McCreight's general evidence of sex discrimination—that is, King's comments about hiring younger mortgage loan originators, and complaints by other female employees alleging mistreatment by King. These cannot carry the day. To be sure, general evidence of discriminatory animus can create an inference that discrimination played a role in a particular case. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328, 1341 (11th Cir. 2011). But presenting sparse examples of an employer's animus toward a particular group is not enough

and size of the entire mortgage department. We therefore cannot rely on these statistics as sufficient evidence of sex discrimination to deny summary judgment.

on its own—a plaintiff also needs evidence connecting that animus to the adverse employment action against her. *See Rojas v. Florida*, 285 F.3d 1339, 1342–43 (11th Cir. 2002). Because McCreight has failed to offer enough evidence for a reasonable jury to conclude that she was discriminated against because of her sex, we affirm the district court's summary judgment order on her Title VII sex-plus-age discrimination claim.

## IV.

McCreight also brought an age discrimination claim under the Age Discrimination in Employment Act, as did Wester.[8] The ADEA prohibits employment discrimination against individuals who are at least forty years old. 29 U.S.C. §§ 623(a)(1), 631(a). To establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross*, 557 U.S. at 176. This standard aligns with the single-motive framework under Title VII, which asks whether discrimination was the outcome-determinative reason for the employment action. *See Quigg*, 814 F.3d at 1235, 1237–39; *Sims v. MVM, Inc.*, 704 F.3d 1327, 1331–33 (11th Cir. 2013).

McCreight and Wester argue that they have provided enough evidence to show that they were fired because of their age. King and AuburnBank disagree; they also ask that we analyze the

---

[8] McCreight and Wester also brought claims under the Alabama Age Discrimination in Employment Act, which has the same standards as the ADEA. *Robinson v. Alabama Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007).

claims only under the *McDonnell Douglas* framework because McCreight and Wester did not raise a "convincing mosaic" argument before the district court. This too (on top of ignoring our recent precedent rejecting this argument) misunderstands the way courts must approach employment discrimination litigation. *McDonnell Douglas* and the "convincing mosaic standard" are two ways to approach the same question: whether the plaintiff has put forward enough evidence for a reasonable jury to conclude that illegal discrimination occurred. Here, however, neither McCreight nor Wester did so—no matter how one looks at it.

### A.

The district court's task at summary judgment is to assess the plaintiff's claims according to the ordinary summary judgment standard. "That legal standard applies no matter how an employee presents her circumstantial evidence." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). As we have explained, the *McDonnell Douglas* framework and the convincing mosaic approach are two paths to the same destination—the ordinary summary judgment standard. *Tynes*, 88 F.4th at 943–47. One approach is not more forgiving than the other on the final question, which is whether a reasonable jury could infer illegal discrimination. But given the continuing confusion on this issue, we add a little more explanation here.

In *McDonnell Douglas*, the Supreme Court "set out a burden shifting framework designed to draw out the necessary evidence in employment discrimination cases." *Tynes*, 88 F.4th at 944. A

plaintiff proceeding under that framework bears an initial burden of establishing a prima facie case of discrimination.[9] *Lewis v. City of Union City (Lewis I)*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). Once that initial burden is met, the employer must articulate a legitimate, nondiscriminatory reason for its adverse employment action, and then, finally, the plaintiff must show that the employer's reason is pretext for unlawful discrimination. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024); *Tynes*, 88 F.4th at 944. This final question of pretext "merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Lewis I*, 918 F.3d at 1221 (alterations adopted and quotations omitted). In other words, the pretext prong of *McDonnell Douglas* is just the ordinary summary judgment standard. *Tynes*, 88 F.4th at 945.

The convincing mosaic approach is—in its entirety—the summary judgment standard. That phrase "is a metaphor, not a

---

[9] The term "prima facie case," though ordinarily meaning "enough evidence for a plaintiff to prevail on a particular claim," carries a different meaning in the *McDonnell Douglas* context—"the establishment of a legally mandatory, rebuttable presumption." *Tynes*, 88 F.4th at 945 (quotation omitted). That presumption serves as "a sort of practical coercion that forces the defendant to come forward with evidence explaining its actions," and it gives the defendant employer "a better idea of what evidence needs to be rebutted." *Id*. (quotation omitted). Once the defendant employer offers evidence of the reason for its actions toward the plaintiff, the prima facie case "drops out of the picture" because the district court now has "all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." *Id*. (quotations omitted).

legal test and not a framework." *Berry*, 84 F.4th at 1311*; see also Poer*, 100 F.4th at 1337; *Ossmann*, 82 F.4th at 1020. It is also a helpful reminder that *McDonnell Douglas* is not the only game in town—a particularly useful point for employees with significant evidence of illegal discrimination who lack the comparator evidence often required to set out a case under *McDonnell Douglas*. *See Smith*, 644 F.3d at 1328; *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012); *see also Lewis I*, 918 F.3d at 1220 & n.6.

Although we have tried to clarify that they are one and the same, some still consider the convincing mosaic as something different than the ordinary summary judgment standard. Perhaps the fact that the phrase "convincing mosaic" is more poetic than your average legal term has contributed to that idea. But imagine if, rather than "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination," the court had said "enough evidence to allow a jury to infer intentional discrimination." *Smith*, 644 F.3d at 1328 (footnote and quotation omitted). We suspect that no one would construe that latter phrase as creating a new framework different from the ordinary summary judgment standard. So to the extent the term "convincing mosaic" has become a distraction, we again reiterate that this "approach to analyzing the evidence treats an employment discrimination suit in the same way we would treat any other case—jumping directly to the ultimate question of liability and deciding whether the moving

party is entitled to judgment at that stage of the case." *Tynes*, 88 F.4th at 947.[10]

What follows is that a plaintiff need not specifically use the term "convincing mosaic" in the trial court to contend on appeal that she has offered enough evidence to survive summary judgment. Contrary to the partial dissent's view, we have never imposed a "magic words" requirement before, and we decline to do so here. *See* Hull Partial Dissent at 6–7. Our "general rule that issues must be raised in lower courts in order to be preserved" does "not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000). So long as a plaintiff argues that she has presented enough evidence for a reasonable juror to infer intentional discrimination, she has preserved that issue and put the court on notice of the relevant standard. Regardless of the term used—"pretext," "convincing mosaic," "summary judgment"—the substance of the argument is the same.

---

[10] The Seventh Circuit, where this phrase originated, agrees. It has repeatedly chastised litigants that the "'convincing mosaic' is not a legal test of any kind." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016). The proper—and only—legal standard is "whether there was evidence from which a reasonable trier of fact could infer discrimination." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (alteration adopted and quotation omitted).

We recognize that this Court may have seemed to suggest something different for the first time in *Bailey v. Metro Ambulance Services*, when the opinion stated that the plaintiff "forfeited any 'convincing mosaic' argument" by failing to sufficiently raise it. 992 F.3d 1265, 1273–74 (11th Cir. 2021). But read closely, the decision in *Bailey* was based on the plaintiff's failure to raise *any* sort of argument in favor of his disparate treatment claim. *Id*. at 1274. Instead, he had claimed that a convincing mosaic of evidence supported a *different* claim he had raised. *Id*. Because Bailey "made no other argument" in support of his disparate treatment claim, this Court affirmed the district court's decision rejecting that claim. *Id*. In other words, the panel's point in *Bailey* was not that the plaintiff had not preserved a convincing mosaic argument by failing to use those magic words; it was that he had failed to preserve any argument at all.

The partial dissent, in contrast, reads *Bailey* to say that a plaintiff forfeits convincing mosaic arguments by failing to use that specific phrase below. Hull Partial Dissent at 12–17. Though we think that is not the best reading, we'll admit it is a plausible one. But it also stands contrary to our decision in *Berry v. Crestwood Healthcare LP*. Under the prior-panel precedent rule we are obligated to reconcile *Bailey* with *Berry* "if at all possible." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993); *see also Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1203 (11th Cir. 2021). Our reading of *Bailey* as addressing a complete failure to defend a claim at summary judgment offers a clear way to harmonize the two cases.

In *Berry*, we rejected the defendant employer's claim that a plaintiff had forfeited the right to raise certain arguments under a convincing mosaic umbrella on appeal because at the district court she had cited certain evidence only to support her *McDonnell Douglas* arguments. *Berry*, 84 F.4th at 1306–07, 1309, 1312–13. No matter—it is issues, not arguments in support of those issues, that can be forfeited if not raised below. *Id.* at 1312; *see also Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992). "The legal standard—and the question for the court at summary judgment," we said, "is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." *Berry*, 84 F.4th at 1311.

We disagree with the partial dissent's view that *Berry* is irrelevant here because the plaintiff in that case used the words "convincing mosaic" in the district court for one of the claims raised, thereby preserving the issue for appeal. Hull Partial Dissent at 17–19. The plaintiff used those magic words, it is true. But as explained above, that was not the basis for the *Berry* panel's decision. The Court recalled that "'convincing mosaic' is a metaphor, not a legal test and not a framework." *Berry*, 84 F.4th at 1311. Indeed, any other response would have been inconsistent with our statement more than two decades earlier that "the plaintiff will always survive summary judgment if he presents

22-12577                    Opinion of the Court                    27

circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d at 1328.[11]

---

[11] We also disagree with the partial dissent's citation to unpublished cases, which do not prove the point that opinion suggests in any event. *See* Hull Partial Dissent at 2 n.2. I will not belabor the argument for too long because, as the partial dissent admits, unpublished cases "are not precedential and they bind no one." *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016). I think it valuable to note, however, that two of the cases cited perform a typical summary judgment analysis even though they disclaim any consideration of the plaintiff's convincing mosaic arguments. *Corley v. Mercedes-Benz U.S. Int'l, Inc.*, No. 21-11986, 2022 WL 2345808 at *3–5 (11th Cir. June 29, 2022) (unpublished); *Skelton v. Birmingham Airport Auth.*, No. 20-13982, 2021 WL 4476800 at *3–4 (11th Cir. Sept. 30, 2021) (unpublished). In other words, those cases already do what this opinion suggests is required. *See, e.g.*, *Skelton*, 2021 WL 4476800 at *4 ("the record evidence did not show a genuine dispute as to any material fact"). Another case, like *Bailey*, rejects a claim because no argument was made at all; indeed, the plaintiff expressly disclaimed any sort of single-motive theory at the district court. *Subotic v. Jabil, Inc.*, No. 22-13880, 2024 WL 797140 at *6 (11th Cir. Feb. 27, 2024) (unpublished). More persuasive, in our view, is that since *Berry* was issued at the end of 2023, at least three cases have rejected the idea that the words "convincing mosaic" need to be used at the district court for us to consider a case under the ordinary summary judgment standard on appeal, and another considered a Title VII case that was briefed without explicitly relying on *McDonnell Douglas* or using the term "convincing mosaic." *Dowdell-McElhaney v. Glob. Payments Inc.*, No. 23-10334, 2024 WL 2796976 (11th Cir. May 31, 2024) (unpublished); *Jeter v. Roberts*, No. 22-13983, 2024 WL 507183 (11th Cir. Feb. 9, 2024) (unpublished); *Jones v. Gadsden Cnty. Sch.*, No. 23-11090, 2024 WL 446241 (11th Cir. Feb. 6, 2024) (unpublished); *Valdes v. Kendall Healthcare Grp., Ltd.*, No. 23-12983, 2024 WL 3356965 (11th Cir. July 10, 2024) (unpublished). If anything, *Berry* offered a clarity that has not caused problems here or in the district court—one that we would interrupt by holding the opposite.

28                    Opinion of the Court                    22-12577

In short, the terms *"McDonnell Douglas"* and "convincing mosaic" do not dictate the legal standard that plaintiffs are entitled to receive at summary judgment. We now consider whether the district court's conclusion that McCreight and Wester failed to provide enough evidence for their ADEA claims to survive summary judgment was correct.

**B.**

To determine whether McCreight and Wester's convincing mosaic arguments on appeal were preserved below, we look to the record—particularly the evidence and issues they advanced before the district court at summary judgment. McCreight and Wester argued below that they provided enough evidence for a reasonable juror to infer intentional discrimination. The district court conducted a pretext analysis, which the Supreme Court has said merges with the ultimate summary judgment question. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). The district court concluded that McCreight and Wester had failed to provide enough evidence to suggest that AuburnBank's reason for firing them was pretextual. In other words, the district court found that McCreight and Wester's ADEA claims failed the ordinary summary judgment standard.[12]

---

[12] This is one reason that we do not share the partial dissent's concern about fair notice to the district court. *See* Hull Partial Dissent at 12, 20–22. Here, as in most cases, the district court considered the plaintiffs' evidence without grounding the conclusion in anything but the ordinary summary judgment standard. What's more, the evidence is the same either way. As we explained

22-12577                Opinion of the Court                29

On appeal, McCreight and Wester again challenge the district court's conclusion that there was not enough evidence to suggest intentional discrimination.  They rely on all the same evidence as they did below—but this time they add the term "convincing mosaic."  That new phrase, however, does not bring with it any new arguments.  *Contra* Hull Partial Dissent at 20–21.  McCreight and Wester's arguments on appeal are substantively the same as they were at the district court: that the evidence presented is enough for a reasonable juror to infer intentional discrimination by AuburnBank.

So although McCreight and Wester did not mention "convincing mosaic" by name in reference to their ADEA claim before the district court, the district court's ultimate task was to consider whether they had put enough evidence in the record to convince a jury that they had faced age discrimination.  That is exactly what it did.  The court explained that neither woman could show that the bank's true reason for firing them was age discrimination.

That determination was correct.  We start with McCreight, who points to five other AuburnBank employees as examples of differential treatment based on age.  McCreight also tries to cast doubt on whether her termination was justified, arguing that she

---

here and in *Tynes*, at the third step of *McDonnell Douglas* the plaintiff tries to show—with whatever evidence she has—that "the real reason for the employment action was discrimination."  *Tynes*, 88 F.4th at 944.

was never told to use a new prequalification letter, that she was given permission to use the old letter, and that AuburnBank deviated from its policies by firing her. Finally, McCreight relies on King's statements about wanting to hire younger women.

This evidence is not enough to show that age discrimination was the true reason McCreight was fired. The record reflects that she improperly approved an unqualified borrower without authorization to do so. Her contention that she did not know about the new form letter she was supposed to use falls flat; the record also shows that she was copied on emails instructing mortgage loan originators to use the new format rather than the old one. And that was not her first error—McCreight had made other serious mistakes and received a reprimand and warning for each.

What's more, the other evidence McCreight points to does not suggest that King fired her because of her age. Three of the other employees she names made mistakes, but none of these mistakes were severe or costly violations like McCreight's. And while two others did make serious and costly mistakes, both resigned or transferred—and neither of them worked under King. Moreover, while we agree that King's comments support McCreight's claims of discrimination, stray comments alone are not enough to overcome the summary judgment standard. *See Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729–30 (11th Cir. 1999). Because McCreight failed to provide sufficient evidence for a

reasonable juror to infer that age was the reason for her termination, her ADEA claim fails.

Wester also fails to provide enough evidence to support her ADEA discrimination claim. She relies on largely the same evidence as McCreight, but adds that she did not commit a serious violation justifying her termination. She contends that the failure to verify a borrower's employment was not actually her own because she had asked her coworkers to handle it while she was out of the office.

But Wester too had a history of not completing her work on time, and she admits that she failed to timely verify the borrower's employment status as her job required. While Wester points to a lack of discipline for various other employees as evidence of age discrimination, that does not move the needle. Without any other evidence, different treatment of different employees with different violations of different rules is not enough. Because neither Wester nor McCreight provided enough evidence to suggest that they were fired because of their age, their ADEA discrimination claims fail.

## V.

We now turn to McCreight and Wester's Title VII and ADEA retaliation claims. Both statutes prohibit an employer from discriminating against an employee because she "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a); *see also* 29 U.S.C. § 623(d). "To that end, employers cannot retaliate against employees who have complained about—

32                    Opinion of the Court                22-12577

that is, opposed—discrimination" based on sex, age, or other protected characteristics. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020).

Three things are required at the outset to support a retaliation claim: (1) a protected activity, (2) an adverse employment action, and (3) a causal connection between them.[13] *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). McCreight and Wester meet the first two: both complained to human resources about King, and their firings were adverse employment actions. *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002); *Crawford*, 529 F.3d at 970.

But the third element presents a problem. McCreight and Wester do not show causation, which requires more than some sort of temporal proximity between the employee's complaints and the adverse employment action. Proof of the decisionmaker's knowledge or awareness of those complaints is also required. *Martin*, 959 F.3d at 1054. McCreight says she complained to Laura Carrington in human resources "that false rumors were being spread about her" and that she was the victim of both age and sex discrimination. She also says that she complained to Vice President Terry Bishop once a month starting in December 2017 that King was wanting to get rid of older females and replace them with younger workers.

---

[13] The same standards apply for both Title VII and ADEA claims. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

So far so good.  Her evidence, however, is missing an essential link.  The record does not show that either of the decisionmakers knew that McCreight had complained about sex or age discrimination.  To start, both King and Herring deny any knowledge of her internal discrimination complaints.  Carrington did meet with the two supervisors, but her contemporaneous notes reflect  that she shared only McCreight's complaint that King had spread false rumors about her; there is no discussion of McCreight's discrimination complaints.  And McCreight makes no argument at all that Bishop told anyone else about her conversations with him.

She does suggest that Carrington *must* have told King, even though Carrington says differently, or that at the very least this is a disputed issue of fact for the jury.  But "a jury finding that a decisionmaker was aware of an employee's protected conduct 'must be supported by reasonable inferences from the evidence, not mere speculation.'"  *Martin*, 959 F.3d at 1053 (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355 (11th Cir. 1999)).  Here, all we have is the latter—mere speculation.

Wester's case is even weaker.  She concedes that she did not use the word "age" when she complained to Carrington about a hostile work environment.  But she says that a jury could infer that she was complaining about age discrimination because she referred to other women who had been fired, and those other women, it turns out, were over the age of forty.

Complaining about a hostile work environment is different from complaining about age discrimination. And in Wester's own telling, she never complained specifically about age discrimination; she told Carrington that she did not like her work environment and requested a transfer. The record reflects that Carrington told King and Herring that Wester had requested a transfer—not that she had complained of age discrimination, or rooted her transfer request in that complaint. And King and Herring both deny knowledge that Wester had made any complaints about age discrimination. That Carrington *could* have told King about her complaints is—again—too attenuated. *Martin*, 959 F.3d at 1053–55. While Wester shows temporal proximity (she was fired two days after complaining), that is not enough on its own. *Id.* at 1054. Because both McCreight and Wester failed to show causation, their retaliation claims fail.

⋆    ⋆    ⋆

Our employment discrimination caselaw provides many approaches for plaintiffs seeking relief from discrimination. But all roads lead to Rule 56—so long as a plaintiff offers enough evidence for a reasonable jury to infer illegal discrimination, her Title VII claim will survive summary judgment. Here, because neither McCreight nor Wester did so, we **AFFIRM**.

22-12577                ABUDU, J., Concurring                    1

ABUDU, Circuit Judge, Concurring:

I agree with the majority opinion that neither McCreight nor Wester presented sufficient evidence to avoid summary judgment on their discrimination claims. I write separately to offer some perspective with respect to the "sex-plus" dilemma plaintiffs who are members of multiple protected groups face when trying to assert and prove their discrimination claims.

While the majority opinion articulates the current state of law when it comes to claims that McCreight deems "intersectional" and the majority opinion refers to as "sex-plus," these identity constructions are more nuanced and merit further attention. Because these kinds of intersectionality claims are not only related to sex-based discrimination, I refer to them as "subgroup discrimination" claims. *See* Marc Chase McAllister, *Proving Sex-Plus Discrimination through Comparator Evidence*, 50 Seton Hall L. Rev. 757, 760 (2020) ("Subgroup discrimination claims . . . focus on the employer's treatment of one segment of a protected group . . . rather than the group as a whole . . . .").

Individuals who are members of multiple protected classes face a heightened risk of discrimination. *See* Trina Jones, *Title VII at 50: Contemporary Challenges for U.S. Employment Law*, 6 Ala. C.R. & C.L. L. Rev. 45, 49 (2014) ("For example, an employer may treat an Asian woman differently from a White woman or an Asian man . . . . Thus, she may be subject to stereotypes to which White women and Asian men are immune."); Kimberlé Crenshaw, *Mapping the Margins: Intersectionality, Identity Politics, and Violence Against*

2                           ABUDU, J., Concurring                    22-12577

*Women of Color*, 43 Stan. L. Rev. 1241, 1244 (1991) ("Because of their intersectional identity as both women *and* of color within discourses that are shaped to respond to one *or* the other, women of color are marginalized within both." (emphasis in original)).  Despite this increased risk of discrimination, the legal landscape is often unreceptive to subgroup discrimination claims.  To begin with, the different statutory schemes for guarding against discrimination create additional complexities for subgroup discrimination plaintiffs.  For example, as explained in the majority opinion, a plaintiff who is discriminated against on the basis of being a female above the age of forty could bring a Title VII sex-discrimination claim on a "sex-plus-age" basis.  *See* Maj. Op. at 10–11.  In that instance, the plaintiff may proceed under either a single-motive or mixed-motive theory of discrimination.  *Id.* at 12–13.  However, if that same plaintiff brought a claim for the same alleged discrimination under the ADEA, she could not prevail on a mixed-motive theory.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009) (holding that the ADEA does not authorize a mixed-motive age discrimination claim).

Unfortunately, the challenges for plaintiffs do not stop at the potential statutory distinctions on subgroup discrimination claims.  Scholars and litigants have advocated for greater acknowledgement of subgroup discrimination claims, and development of protections for these individuals has been slow.  Jones, *supra*, at 49–51.  Whatever progress has been made has yet to provide a framework to address the subtle, but undeniable forms of discrimination subgroup members may encounter.  *See id.* at 50–51 (describing subsets

22-12577                ABUDU, J., Concurring                3

of workers who may be harmed based on intra-group differences such as skin tone, one's pride in their racial heritage, or other aspects of multiple social identities).  Even worse, some of the most basic questions in this area of law remain unanswered.  For example, federal courts are divided on the exact requirements for proving subgroup discrimination claims.  *Compare Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020) (holding that a sex-plus plaintiff "must show unfavorable treatment relative to an employee of the opposite sex who also shares the 'plus-' characteristic"), *and Fisher v. Vassar Coll.*, 70 F.3d 1420, 1446 (2d Cir. 1995) ("To establish that [an employer] discriminated on the basis of sex plus marital status, [a] plaintiff must show that married *men* were treated differently from married *women*." (emphasis in original)) (subsequent history omitted), *with Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir. 1971) (finding discrimination claim based on employer's policy of terminating married women was not "negated by [employer]'s claim that the female employees occupy a unique position so that there is no distinction between members of opposite sexes within the job category"), *and McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323, 327 (E.D. Pa. 1997) (finding plaintiff survived summary judgment on her sex-plus Title VII discrimination claim where comparator was another woman who was not in her proffered subgroup of "women who have children with disabilities").

As this Court interprets and applies laws protecting employees from discrimination, we should be mindful of individuals who face discrimination based on membership in more than one

4                    ABUDU, J., Concurring                    22-12577

protected class and that the existing legal framework for protecting them is often inadequate to address the multiple layers of discriminatory behavior.

22-12577 Hull, J., Concurring in part and Dissenting in part        1

HULL, Circuit Judge, Concurring in part and Dissenting in part:

I concur in full in Sections I, II, III, and V of the Court's opinion, which affirms summary judgment for the defendants on (1) plaintiff McCreight's sex discrimination claim under Title VII and (2) plaintiffs McCreight's and Wester's retaliation claims under Title VII and the ADEA. However, I am unable to join Section IV as to the plaintiffs' age discrimination claims because Section IV does not follow our forfeiture precedent and violates our prior panel precedent rule.

Our *Bailey* forfeiture precedent holds that a plaintiff forfeits the "convincing mosaic" way of inferring discriminatory intent by failing to squarely present that issue in the summary judgment briefing in the district court. *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273-74 (11th Cir. 2021). As the defendants emphasize, the plaintiffs forfeited the "convincing mosaic" issue as to their age claims because *in the district court* they briefed their circumstantial evidence as to those claims under only the *McDonnell Douglas* framework.[1] Under our forfeiture precedent in *Bailey*, plaintiffs cannot switch horses at this stage by raising and briefing the "convincing mosaic" issue for the first time on appeal. I dissent because Section IV both violates our forfeiture precedent and adopts a new no-forfeiture rule that deprives district courts of fair notice and briefing of the issues to be decided.

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

2    Hull, J., Concurring in part and Dissenting in part  22-12577

To be clear, this case is not about which of those two differ-ent circumstantial evidence tools—*McDonnell Douglas*'s framework or the alternative "convincing mosaic" metaphor—is the better, less judge-made, or more direct method to defeat summary judg-ment.  Rather, the threshold question here is only a forfeiture issue.

Bear with me as I walk through these four points:

(1) What actually happened in the district court and how as to their age claims the plaintiffs did not raise or brief the "convinc-ing mosaic" issue in the district court and thus forfeited that issue on appeal.

(2) Our *Bailey*'s forfeiture holding—that a plaintiff forfeits the "convincing mosaic" way of inferring discriminatory intent by failing to present that issue in the summary judgment briefing— and why *Bailey* controls this case.[2]

(3) Why the Court's assertion—that our 2021 *Bailey* decision "stands contrary to our decision in" *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300 (11th Cir. 2023)—is wrong.  Plaintiff Berry raised the "convincing mosaic" issue in the district court. What changed on appeal in *Berry* was the plaintiff's specific *arguments* falling under the same "convincing mosaic" umbrella.  In contrast, here the plaintiffs switched wholly from a *McDonnell Douglas* issue in the

---

[2] As detailed in specific citations in my last section, our Court, often citing *Bai-ley*, has correctly held in many recent unpublished decisions that a plaintiff's failure to raise explicitly the "convincing mosaic" issue in the district court for-feits that issue on appeal.

22-12577 Hull, J., Concurring in part and Dissenting in part    3

district court to solely the "convincing mosaic" issue on appeal, which makes this case fall under *Bailey* and shows there is no conflict between *Bailey* and *Berry*.

(4) The consequences of the Court's adoption of a new no-forfeiture rule that collapses *McDonnell Douglas* and the "convincing mosaic" issues into a single issue, whereby the plaintiffs can preserve the "convincing mosaic" issue on appeal even though the plaintiffs raised and briefed only the *McDonnell Douglas* issue in the district court.

## I.  DISTRICT COURT PROCEEDINGS

### A.    Defendants' Briefs in Support of Summary Judgment

In the district court, the defendants asserted they were entitled to summary judgment on the plaintiffs' age claims under *both McDonnell Douglas*'s three-step burden-shifting framework and the alternative "convincing mosaic" method.[3]  The defendants' briefs had a numbered section devoted to *McDonnell Douglas* in which they analyzed the evidence and argued the plaintiffs failed to satisfy their prima facie case burden to present evidence of valid comparators.

The defendants' briefs also had a separately numbered section entitled: *"There is no 'convincing mosaic of circumstantial evidence.'"*  (Emphasis added.)  That section expressly acknowledged

---

[3] For each plaintiff, the defendants filed a separate brief which followed the same pattern, so I treat them jointly.  The plaintiffs filed a joint response.

4   Hull, J., Concurring in part and Dissenting in part  22-12577

that *McDonnell Douglas* "[wa]s not the only avenue" for the plaintiffs to survive summary judgment.  The defendants' briefs cited some of our convincing mosaic precedent, including *Smith v. Lockheed Martin Corp.*, 664 F.3d 1321 (11th Cir. 2011).  The defendants' briefs even correctly stated the general "convincing mosaic" principle: "The triable issue exists if 'the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  And then, the defendants' briefs analyzed all the circumstantial evidence under the "convincing mosaic" approach.

What happened next makes the plaintiffs' forfeiture crystal clear.

**B.    Plaintiffs' Joint Summary Judgment Response**

Even though the defendants' briefs had separate sections on the "convincing mosaic" approach and the *McDonnell Douglas* framework, the plaintiffs' joint response brief did *not* raise or brief the alternative "convincing mosaic" method or cite any of this Court's convincing mosaic decisions as to their age claims.

Rather, the plaintiffs' joint response brief cited only *McDonnell Douglas* cases and addressed only the three *McDonnell Douglas* steps of the prima facie case, the legitimate reason for the termination, and pretext.  More specifically, the plaintiffs' summary judgment response claimed each had demonstrated a prima facie case of age discrimination—Wester by being replaced with a younger employee and McCreight by pointing to a younger, similarly

22-12577 Hull, J., Concurring in part and Dissenting in part        5

situated comparator who was not terminated.  The plaintiffs also argued AuburnBank's proffered reasons for firing them were not legitimate and were pretextual.

What's more, in outlining the applicable law as to their age claims, the plaintiffs cited these three cases, which all applied only *McDonnell Douglas*'s three-step framework and did not mention the "convincing mosaic" method at all: *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304 (11th Cir. 2012); *Crawford v. City of Fairburn*, 482 F.3d 1305 (11th Cir. 2007); and *Cobb v. City of Roswell*, 533 F. App'x 888 (11th Cir. 2013).

Notably, too, the plaintiffs' "pretext" argument was that the defendants' proffered legitimate reason for terminating them was not worthy of credence and thus pretextual, citing the *McDonnell Douglas* case of *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344 (11th Cir. 2007).

The plaintiffs' omission of the "convincing mosaic" issue as to their age claims is particularly glaring given that a separate section of the plaintiffs' same joint summary judgment response addressed McCreight's sex-plus discrimination claim and *explicitly raised the "convincing mosaic" issue* by name and cited our "convincing mosaic" cases.

## C.    District Court's Summary Judgment Order

Given how the plaintiffs elected to brief their age claims, the district court understandably analyzed those claims under only *McDonnell Douglas*'s framework—the only way the plaintiffs briefed that issue.  The Court states "the district court considered the

6    Hull, J., Concurring in part and Dissenting in part  22-12577

plaintiffs' evidence without grounding the conclusion in anything but the ordinary summary judgment standard." Maj. Op. at 28 n.12 (citing Doc. 142 at 9-35). That is simply not accurate. The district court's conclusions as to the plaintiffs' age discrimination claims were grounded very particularly and exclusively in its analysis of the steps of the *McDonnell Douglas* framework.

First, in Section V.B.1 of its order, the district court "dispense[d] with" whether McCreight made a prima facie case and analyzed whether AuburnBank's proffered reason for terminating her was pretextual because that "pretext analysis [was] dispostive." The district court concluded that McCreight's evidence—which included King's ageist comments and the more favorable treatment for younger workers' mistakes—"failed to demonstrate pretext."

Moving to plaintiff Wester's age claims, the district court concluded in Section V.B.2 of its order that (1) Wester had established a prima facie case under the *McDonnell Douglas* framework, (2) but her circumstantial evidence—the same as McCreight's evidence—was "insufficient to rebut" AuburnBank's legitimate reason for terminating Wester, and (3) thus "Wester ha[d] failed to present sufficient evidence to demonstrate that AuburnBank's reason for firing her was pretextual."

Section V.B. of the district court's order did not consider whether either plaintiff's circumstantial evidence, although insufficient to satisfy the pretext prong of the *McDonnell Douglas* framework, could nonetheless support a reasonable inference of discriminatory intent. And the district court cannot be faulted for this

22-12577 Hull, J., Concurring in part and Dissenting in part    7

omission because neither plaintiff gave the court any indication in their joint summary judgment response that they were relying on the convincing mosaic approach to defeat summary judgment on their age claims.

Contrary to Section IV of the Court's opinion, the forfeiture issue is not about "magic words" or the "incantation of particular words." Maj. Op. at 24. Rather, it is about *the requirement* that the district court be fairly put on notice of a plaintiff's claims and the issues to be decided by the district court. No matter how my colleagues try to slice and dice it, the plaintiffs here tried to defeat summary judgment on their age claims under only the *McDonnell Douglas* framework and nothing else. Thus, the district court addressed the *McDonnell Douglas* framework and nothing else.

Now, on appeal, the plaintiffs adopt a different position. As to their age claims, the plaintiffs' opening appellate brief raises no issues under *McDonnell Douglas*'s framework and instead contends only that the district court should have denied summary judgment under the "convincing mosaic" method.

The defendants respond that McCreight and Wester forfeited any reliance on the "convincing mosaic" approach by failing to raise and brief it in the district court. This is not close. It is clear cut what actually happened in the district court, and no glossing over can change that.

8    Hull, J., Concurring in part and Dissenting in part  22-12577

## II.  OUR FORFEITURE PRECEDENT

### A.    Threshold Question

So, the threshold question for our Court is whether the plaintiffs' joint summary judgment response in the district court forfeited the alternative "convincing mosaic" issue by addressing only *McDonnell Douglas*'s three-prong framework as to their age claims.

The Court says no.  The first two steps of its reasoning are that (1) the "convincing mosaic" approach is no different than the ordinary summary judgment standard, and (2) the ordinary summary judgment standard in discrimination cases is whether a plaintiff presented enough evidence for a reasonable jury to infer intent to discriminate.  Maj. Op. at 21.  So far, so good.  This merely states the general summary judgment standard in all discrimination cases.

Only the Court's third step involves forfeiture and is where I part company.  Here's the Court's new no-forfeiture rule:

> So long as a plaintiff argues that she has presented enough evidence for a reasonable juror to infer intentional discrimination, she has preserved that issue and put the court on notice of the relevant standard.  Regardless of the term used—"pretext," "convincing mosaic," "summary judgment"—the substance of the argument is the same.

22-12577 Hull, J., Concurring in part and Dissenting in part        9

Maj. Op. at 24.  In other words, there is no forfeiture of different issues (such as the *McDonnell Douglas* framework or the alternative "convincing mosaic" issue) at summary judgment in discrimination cases as long as the plaintiff merely argues that the evidence presents a jury issue as to intentional discrimination.  That is simply the Rule 56 standard in every discrimination case and does not fairly put a district court on notice of what issues to address.  Most certainly, this district court was not on notice of the "convincing mosaic" issue given how the plaintiffs briefed their case only under the *McDonnell Douglas* framework.  Just the opposite.

In any event, the Court's new no-forfeiture rule violates our prior panel precedent in *Bailey*, which held a plaintiff forfeits the "convincing mosaic" issue by failing to squarely present it in the summary judgment briefs in the district court.  *See Bailey*, 992 F.3d at 1273-74.

Some table setting before diving into our forfeiture precedent and how the Court violates our prior *Bailey* precedent.

## B.    Two Ways to Use Circumstantial Evidence to Defeat Summary Judgment

The *McDonnell Douglas* burden-shifting framework and the more expansive "convincing mosaic" approach are two different tools or ways to use *circumstantial evidence* to create an inference of intentional discrimination to defeat summary judgment.  Even the Majority describes them as "two ways" or "two paths" to attempt to defeat summary judgment.  Maj. Op. at 2, 21.

10  Hull, J., Concurring in part and Dissenting in part  22-12577

To date, our precedent treats them as *alternative* tools and analyzes the issues *separately* using different analytical factors.  *See, e.g.*, *Berry*, 84 F.4th at 1307-13 (stating the *McDonnell Douglas* three-step framework is "one tool" and "not the exclusive means" and analyzing plaintiff's Title VII retaliation claim first under the *McDonnell Douglas* framework and *alternatively*, in a separate section, under the "convincing mosaic" method that uses circumstantial evidence of any kind (quotation marks omitted)); *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1341-42 (11th Cir. 2023) (same); *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1015-20 (11th Cir. 2023) (analyzing plaintiffs' circumstantial evidence of race discrimination under the "convincing mosaic" approach as "an alternative" after concluding the circumstantial evidence could not satisfy the third step of the *McDonnell Douglas* framework); *Jenkins v. Nell*, 26 F.4th 1243, 1249-51 (11th Cir. 2022) (analyzing plaintiff's 42 U.S.C. § 1981 race discrimination claim first under the *McDonnell Douglas* framework and alternatively under the "convincing mosaic" method).[4]

---

[4] *See also Lewis v. City of Union City*, 918 F.3d 1213, 1231 & n.20 (11th Cir. 2019) (en banc) (*Lewis I*) (concluding plaintiff's circumstantial evidence did not satisfy the *McDonnell Douglas* framework, noting Lewis's ADA claims and "convincing mosaic" "theory" of Title VII liability were not before the en banc court, and remanding "[t]hose issues, and any other pending matters . . . to the panel for resolution in the first instance"); *Lewis v. City of Union City*, 934 F.3d 1169, 1185-89 (11th Cir. 2019) (*Lewis II*) (concluding on remand that the plaintiff prevailed—i.e., survived summary judgment—on "convincing mosaic" grounds).

22-12577   Hull, J., Concurring in part and Dissenting in part      11

Given our consistent recognition of the two alternative ways to use circumstantial evidence, it is not surprising that our forfeiture precedent in *Bailey* treats them as separate issues and requires them to each be raised or be forfeited. *See Bailey*, 992 F.3d at 1274 (holding a plaintiff forfeits the "convincing mosaic" issue by failing to squarely present it in the summary judgment briefing in the district court).

Our *Bailey* precedent is on point. Although the Court in Section IV suggests my reading of *Bailey* is "a plausible one," Section IV asserts it "stands contrary to our decision" in *Berry* and thus we must "reconcile *Bailey* with *Berry*." Maj Op. at 25. The Court also asserts "the partial dissent's view" is that "*Berry* is irrelevant." Maj. Op. at 26.

Not so. To be clear, my view is *Bailey* (2021) and *Berry* (2023) involved different questions, and there is no conflict between them. Specifically, in *Berry*: (1) the plaintiff separately and adequately raised both the *McDonnell Douglas* issue and the "convincing mosaic" issue in the district court; (2) the *Berry* Court addressed both issues in separate sections; (3) the plaintiff advanced the same issue in the district court and on appeal: whether "she presented a convincing mosaic of circumstantial evidence that raises a reasonable inference of retaliation," *Berry*, 84 F.4th at 1311; but (4) what changed on appeal was Berry's specific *arguments* falling under *the same "convincing mosaic" umbrella*. In contrast, the *Bailey* plaintiff did not squarely raise the "convincing mosaic" issue at all in the district court and forfeited the issue on appeal. Thus, this case falls

12  Hull, J., Concurring in part and Dissenting in part  22-12577

under *Bailey* and not *Berry*.  My detailed tour of *Bailey* and *Berry* shows *Bailey* controls our case and how the Court violates the prior panel precedent rule by not following it.

## C.    *Access Now* and then *Bailey*

Long before *Bailey*, our Circuit had already established the rule "that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted).[5]  The corollary of this rule is that, if a party hopes to preserve a claim, issue, theory, or defense on appeal, she must first clearly present it to the district court, that is, "in such a way as to afford the district court an opportunity to recognize and rule on it." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) (quotation marks omitted).

As to the plaintiffs' age claims, the district court here addressed only the three steps of the *McDonnell Douglas* framework because that was what the plaintiffs briefed as to their age claims and was the clear briefing signal to the district court.  How the plaintiffs briefed their case did not give the district court fair notice it needed to rule on the "convincing mosaic" approach as to their age claims.  We could apply *Access Now* and be done.

---

[5] Although there are circumstances in which we may address an issue raised for the first time on appeal, none of those circumstances apply here.  *See Access Now*, 385 F.3d at 1332.

22-12577 Hull, J., Concurring in part and Dissenting in part    13

But there's even more precedent—*Bailey*—which addresses the specific forfeiture issue here.  In *Bailey*, our Court concluded that a plaintiff forfeits a "convincing mosaic theory" of showing discriminatory intent by failing to "squarely present[]" it in summary judgment briefing in the district court.  *Bailey*, 992 F.3d at 1273-74.

This is consistent with how we also have concluded a party can forfeit sub-issues under the *McDonnell Douglas* framework of proving intentional discrimination.  *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) (concluding defendant forfeited whether plaintiff established a prima facie case under *McDonnell Douglas* because it was not argued at summary judgment).  It is also consistent with another discrimination case, in which our Court concluded that a plaintiff who "puts all her eggs in the direct-evidence basket" forfeits "the available methods of making out a circumstantial-evidence case."  *See Harris v. Pub. Health Tr. of Mia.-Dade Cnty.*, 82 F.4th 1296, 1301 (11th Cir. 2023).

Now my deep dive through *Bailey* and then *Berry*.

### 1. *Bailey*

In *Bailey*, the plaintiff, a Rastafarian, brought three Title VII claims against his former employer for "failure to reasonably accommodate Bailey's religious requirement, discrimination on the basis of religion, and retaliation for filing a discrimination claim."  992 F.3d at 1269.  Bailey claimed his employer "treated him worse than non-Rastafarians because he was Rastafarian."  *Id.* at 1273.  As to disparate treatment based on religion, Bailey alleged "two

14  Hull, J., Concurring in part and Dissenting in part  22-12577

separate disparate-treatment theories: a traditional disparate-treatment claim and a failure-to-reasonably-accommodate disparate-treatment claim." *Id.* at 1272.  "Bailey sought summary judgment on the retaliation claim, and [his employer] filed for summary judgment on all claims." *Id.*

In his summary judgment response *in the district court*, Bailey actually included the "convincing mosaic" theory in "his *general discussion* of the law governing disparate-treatment claims." *Id.* at 1273 (emphasis added).  Bailey's response asserted that his brief in support of his own summary judgment motion provided "convincing mosaic" *evidence* of "direct suspicious timing evidence" in support of his traditional disparate treatment claim. *Id.*  However, Bailey's summary judgment briefing "did not deliver on its promise." *Id.*

Instead, *in the district court*, Bailey's own summary judgment brief raised and argued a "convincing mosaic" theory "in conjunction with only Bailey's *retaliation* claim"—"not in conjunction with a traditional religious *disparate-treatment* discrimination claim." *Id.* at 1273-74 (emphasis added).  Just like the plaintiffs here.

Then, on appeal, Bailey, like the plaintiffs here, tried to raise the "convincing mosaic" issue as to his *disparate treatment* claim, but our Court held Bailey had forfeited it. *Id.*  We based this forfeiture conclusion on "[t]he clear import of all this briefing" in the district court. *Id.* at 1274.

Specifically, the *Bailey* Court stated: "We disagree that Bailey squarely presented a 'convincing mosaic' argument to support his

22-12577 Hull, J., Concurring in part and Dissenting in part    15

disparate-treatment theory in his summary-judgment briefing in the district court." *Id.* at 1273. In addition, our Court said that "while Bailey tried in his objections to the report and recommendation to assert a 'convincing mosaic' argument in support of his traditional disparate-treatment claim, *he once again made no specific arguments tying the 'convincing mosaic' theory to his disparate-treatment claim.*" *Id.* at 1274 (emphasis added). Bailey twice actually discussed the "convincing mosaic" theory in the district court—in his general law discussion and in his objections to the report and recommendation as to his disparate treatment claim—but he never followed that up with "convincing mosaic" arguments using or tying his evidence to that claim. *Id.* at 1273-74.

In its concluding paragraph as to this issue, this Court squarely ruled *"Bailey forfeited any 'convincing mosaic' argument in support of his traditional religious disparate-treatment discrimination claim."* *Id.* at 1274 (emphasis added). At bottom, Bailey raised the "convincing mosaic" issue on appeal, but Bailey forfeited it by not raising it adequately as to his disparate treatment claim in the district court. And since Bailey *on appeal* "made no other argument to support that version of his disparate-treatment discrimination claim, we affirm[ed] the district court's grant of summary judgment for [his employer] on Bailey's traditional religious disparate-treatment discrimination claim." *Id.* In other words, the "convincing mosaic" theory was the only argument Bailey made on appeal as to his traditional disparate treatment claim, but it was not squarely raised in the district court and thus was forfeited on appeal, requiring us to affirm summary judgment.

16  Hull, J., Concurring in part and Dissenting in part  22-12577

The Court tries to write around *Bailey*. The Court admits the *Bailey* decision "stated that the plaintiff 'forfeited any "convincing mosaic" argument' by failing to sufficiently raise it" in the district court. Maj. Op. at 25. But then comes the dodge. The Court's Section IV opines that (1) "the decision in *Bailey* was based on the plaintiff's failure to raise *any* sort of argument in favor of his disparate treatment claim," (2) Bailey "had claimed that a convincing mosaic of evidence supported a *different* claim he had raised," and (3) thus "[b]ecause Bailey 'made no other argument' in support of his disparate treatment claim, this Court affirmed the district court's decision rejecting that claim." *Id.* This description in Section IV strings snippets from *Bailey* together out of context.

To the contrary, the Court's focus in *Bailey* was on whether the "convincing mosaic" issue *in particular* was sufficiently raised in the district court as to the disparate treatment claim. The *Bailey* Court concluded it was not because, although Bailey had mentioned "convincing mosaic" by name in his general discussion of the law and his objections to the report about his disparate treatment claim, he never tied his "convincing mosaic" evidence to his disparate treatment claim. *Id.* at 1274. *Bailey* was not about "any sort of argument" but was expressly about Bailey's convincing mosaic issue in particular.

My above description of *Bailey* accurately portrays what happened, what *Bailey* held, and why it controls this case. That also explains why, as I show later, our recent decisions cite *Bailey* and

22-12577 Hull, J., Concurring in part and Dissenting in part    17

follow its holding that a plaintiff forfeits the "convincing mosaic" issue by failing to raise it squarely in the district court.

### 2. *Berry*

In Section IV, the Court argues that our *Bailey* "stands contrary to our decision in *Berry*," and we must "reconcile" them. Maj. Op. at 25. But *Bailey* (2021) and *Berry* (2023) involved different questions, and there is no conflict between them that needs reconciling.

As background, the *Berry* plaintiff claimed she was terminated in retaliation for complaints of race discrimination. *Id.* at 1304. The *Berry* appeal involved only retaliation claims brought under Title VII and § 1981. *Id.* at 1307. At the outset, the *Berry* Court states: "Both statutes require the same proof and analytical framework," and "[s]o we analyze the claims together." *Id.*

Then, the *Berry* Court separated its opinion into two parts: (1) an analysis of Berry's retaliation claims under the *McDonnell Douglas* framework, examining the prima facie case, the legitimate reason for Berry's termination, and pretext in Section III.A. and (2) a separate analysis of her retaliation claims under the alternative convincing mosaic approach, examining whether Berry's circumstantial evidence of any kind created a reasonable inference of retaliatory intent in Section III.B. *Id.* at 1307-13.

As further background, as to her retaliation claims, it is undisputed that the *Berry* plaintiff "argued" the "convincing mosaic" issue in opposing summary judgment *in the district court*. Here again is what the *Berry* Court itself said as to the plaintiff's retaliation claims:

18  Hull, J., Concurring in part and Dissenting in part  22-12577

> Berry responded [to her employer's summary judgment motion] that she had established a prima facie case because of the close temporal proximity between her protected activity and termination. And she argued that [her employer's] justification for her termination was pretextual. *Berry also argued that she presented a convincing mosaic of circumstantial evidence of retaliation*.

*Id.* at 1306-07 (emphasis added). *Berry* did *not* involve a plaintiff who merely intoned the words "convincing mosaic" and thus failed to sufficiently raise the "convincing mosaic" issue *in the district court*.

Rather, in *Berry*, the plaintiff advanced the same "issue" in the district court and on appeal—whether "she presented a convincing mosaic of circumstantial evidence that raises a reasonable inference of retaliation." *Id.* at 1311. The *Berry* Court explicitly said: "Berry argues that even if her claims fail under the *McDonnell Douglas* framework, her claims survive because she presented a convincing mosaic of circumstantial evidence that raises a reasonable inference of retaliation." *Id.* And "[i]f a party presents an issue to the district court, she may make any argument in support of that issue on appeal." *Id.* at 1312.

What changed on appeal was Berry's *specific* "arguments" falling *under the same "convincing mosaic" umbrella*. *See id.* (explaining the defendant Crestwood complained "that Berry did not preserve the convincing-mosaic *arguments*" she raised on appeal (emphasis added)).

22-12577 Hull, J., Concurring in part and Dissenting in part      19

The *Berry* Court rightly rejected the defendant's forfeiture contention because Berry properly preserved her "convincing mosaic" issue by sufficiently raising and arguing it in the district court in the summary judgment briefing as to her retaliation claims. *Id.* at 1307, 1312. And plaintiff Berry was not limited on appeal to the precise "convincing mosaic" *arguments* she had made in the district court in support of the clearly preserved "convincing mosaic" issue. *Id.* (citing *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018)).

*Berry* does not cite, or grapple with, our forfeiture precedent in *Bailey (*or *Harris* and *Bryant*) because it had no reason to do so. Because the *Berry* plaintiff raised the "convincing mosaic" issue *in the district court* as to her retaliation claims, *Berry* is not this case. Rather, this case falls directly under *Bailey*, where the plaintiff failed to squarely raise the convincing mosaic issue *in the district court*. And for this particular case, even if our 2023 *Berry* somehow creates a potential conflict (which it does not), our 2021 *Bailey* is first in time and controls.[6]

---

[6] The timing perhaps sheds light on what's really going on. The defendants' brief relied on *Bailey*. *Berry* was decided on October 27, 2023, after all briefs were filed but before oral argument in this case on November 15, 2023. Yet for ten months the plaintiffs have not filed a Rule 28(j) letter citing to *Berry*. Rather, the Court itself has seized upon *Berry*, and, respectfully, misdescribed it and tried to create a phantom conflict to avoid our *Bailey* forfeiture precedent.

20  Hull, J., Concurring in part and Dissenting in part  22-12577

### III.  ANALYSIS AS TO McCREIGHT AND WESTER

The separate age-discrimination section of the plaintiffs' summary judgment response did not mention, much less tie, the "convincing mosaic" theory to their age claims.  This omission was glaring because the plaintiffs' response did raise and tie the evidence to the "convincing mosaic" issue as to McCreight's sex-plus claim.  Thus, as in *Bailey*, McCreight and Wester forfeited the "convincing mosaic" issue as to their age claims by failing to advance it in the district court and raising it for the first time on appeal.

My conclusion focuses on what actually occurred in the briefing in this particular case.  Here, the district court addressed what the plaintiffs raised and briefed as to their age claims, and the plaintiffs are not permitted to raise new issues for the first time on appeal.  Plaintiffs can choose how to litigate their cases in the district court and did so here.

### IV.  CONSEQUENCES OF THE NEW NO-FORFEITURE RULE

I recognize the plaintiffs' age claims fail on appeal, whether for procedural reasons (forfeiture) or for substantive reasons (Section IV's merits analysis).  But I think it is my duty to write

---

This is not to say courts should not address precedent if not cited by the parties.  But it is to say that the plaintiffs have not cited *Berry*, and thus the Majority, in my view, unfairly accuses the defendants of "ignoring our recent precedent" in *Berry*.  Maj. Op. at 21.

22-12577 Hull, J., Concurring in part and Dissenting in part        21

separately because Section IV not only violates our prior panel precedent rule but also has significant untoward consequences.

For starters, Section IV's new no-forfeiture rule—a plaintiff's stating the basic summary judgment standard preserves all issues—means district courts will not have the required fair notice of the issues to be decided.  To defeat summary judgment, plaintiffs routinely use one or more evidentiary tools: (1) direct evidence; (2) circumstantial evidence under *McDonnell Douglas*'s three-step burden-shifting framework; and (3) circumstantial evidence under the "convincing mosaic" theory.  Our precedent contains distinct and different analytical factors in each approach.  Plaintiffs need to alert both the district court and the defendants which evidentiary tools and analytical factors they rely on.  That is only fair notice.  But the Court's new no-forfeiture rule absolves plaintiffs of that fair-notice duty.

In turn, the new no-forfeiture rule deprives this appellate court of the benefit of the district court's analysis, in the first instance, applying the different and distinct evidentiary approaches to the summary judgment record, which is often voluminous in discrimination cases.  This is a case in point.  There was no analysis in the district court's order of all the circumstantial evidence under the "convincing mosaic" issue because the plaintiffs briefed, and thus the district court addressed, only the *McDonnell Douglas* issue.

Given these consequences and our forfeiture precedent, I concur only in the judgment in Section IV of the Court's opinion,

22  Hull, J., Concurring in part and Dissenting in part  22-12577

and respectfully dissent from the Court's failure to follow our forfeiture precedent as to the plaintiffs' age claims.[7]

## V.  UNPUBLISHED DECISIONS FOLLOWING *BAILEY*

One last concern.  While I rarely cite non-published decisions, the Majority's failure to follow *Bailey* in Section IV will be readily noticed by employment lawyers as conflicting with recent non-published decisions.  So, let's just acknowledge and be candid about them.

While not binding, this Court, often citing *Bailey*, has correctly held in many recent unpublished decisions that a plaintiff's failure to raise explicitly the "convincing mosaic" issue in the district court forfeits that issue on appeal.  *See, e.g., Subotic v. Jabil, Inc.*, No. 22-13880, 2024 WL 797140, at *6-7 & *6 n.4 (11th Cir. Feb. 27, 2024) (citing *Bailey* and holding, as to plaintiff's discrimination claim, he forfeited his "convincing mosaic" theory by raising it for

---

[7] As an aside, I am sympathetic to the view that perhaps the "convincing mosaic" issue should be the primary issue and the *McDonnell Douglas* issue "relegate[d] . . . to the sidelines." *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 958 (11th Cir. 2023) (Newsom, J, concurring).  But, to date under our forfeiture precedent, they remain separate issues for good reasons—so the district court and the parties have fair notice of the issues to be addressed, and then our Court has the benefit of the district court's analysis of each issue.

Indeed, our circuit precedent properly allows plaintiffs in discrimination cases to raise both issues alternatively.  Most litigants do just that.  The problem here is the plaintiffs elected to raise only the *McDonnell Douglas* issue in the district court as to their age claims.  We should not sacrifice our well-established forfeiture precedent because they have elected not to do so.

22-12577 Hull, J., Concurring in part and Dissenting in part    23

the first time on appeal); *Lewis v. Sec'y of the U.S. Air Force*, No. 20-12463, 2022 WL 2377164, at *11 (11th Cir. June 30, 2022) (citing *Bailey* and holding "Lewis has abandoned [her "convincing mosaic"] argument by failing to raise the issue before the district court"); *Skelton v. Birmingham Airport Auth.*, No. 20-13982, 2021 WL 4476800, at *3 (11th Cir. Sept. 30, 2021) (citing *Bailey* and noting a plaintiff whose claim fails under *McDonnell Douglas* may survive summary judgment through a "convincing mosaic" of circumstantial evidence, but holding plaintiff waived the "convincing mosaic" issue by failing to raise it below); *Corley v. Mercedes-Benz U.S. Int'l, Inc.*, No. 21-11986, 2022 WL 2345808, at *3 n.3 (11th Cir. June 29, 2022) (citing our forfeiture precedent in *Access Now*, 385 F.3d at 1331, and noting a discrimination claim can proceed under either the *McDonnell Douglas* framework or "convincing mosaic" theory, but analyzing plaintiff's claim under only the *McDonnell Douglas* framework because plaintiff did not raise the "convincing mosaic" theory in the district court, so that issue was not properly before us); *Jest v. Archbold Med. Ctr., Inc.*, 561 F. App'x 887, 888-89 (11th Cir. 2014) (predating *Bailey* but citing *Access Now* and holding plaintiff failed to establish a prima facie case of race discrimination under *McDonnell Douglas* and forfeited the "convincing mosaic" issue by failing to raise it in the district court).[8]

In its footnote 11, the Majority argues these five non-published decisions "do not prove the point" my partial dissent

---

[8] As now allowed, the defendants' appellate brief cited the non-published *Jest* decision, in addition to our published *Bailey*. *See* Fed. R. App. Proc. 32.1.

24  Hull, J., Concurring in part and Dissenting in part  22-12577

suggests because two of them (*Corley* and *Skelton*) "perform a typical summary judgment analysis." Maj. Op. at 27 n.11. Not correct. In *Corley* and *Skelton*, the "typical summary judgment analysis" performed in those cases was expressly under the *McDonnell Douglas* framework, as the alternative convincing mosaic approach was forfeited. *See Corley*, 2022 WL 2345808, at *3-4 & n.3; *Skelton*, 2021 WL 4476800, at *3-4.

And contrary to the Majority's footnote 11, I respectfully submit that the *Subotic* and *Lewis* decisions also hold directly and expressly that the plaintiff forfeited a "convincing mosaic" issue by not raising it in the district court. *See Subotic*, 2024 WL 797140, at *6 n.4; *Lewis*, 2022 WL 2377164 at *11.

In its same footnote 11, the Court also cites four different unpublished decisions "since *Berry*" that the Court asserts "rejected the idea that the words 'convincing mosaic' need to be used at the district court for us to consider a case under the ordinary summary judgment standard." Maj. Op. at 27 n.11. This is also incorrect. Those four unpublished decisions never use the word "forfeiture" anywhere because they did not involve a defendant arguing that the "convincing mosaic" issue was forfeited. What's more, *Berry* is cited in only footnotes and only for the general propositions that a plaintiff may survive summary judgment using the *alternative* "convincing mosaic" approach and that a "convincing mosaic" is a metaphor, not a test, whereby a plaintiff may use circumstantial evidence to attempt to create a jury issue.

22-12577 Hull, J., Concurring in part and Dissenting in part    25

At bottom, the unpublished decisions I cite above follow *Bailey*, as they must, and the unpublished decisions cited in the Majority's footnote 11 do not involve a forfeiture issue at all, much less one like *Bailey* and this case.  The only inconsistency here is not between my cited unpublished decisions and the Majority's, but with the Majority's instant published decision that fails to follow our *Bailey* precedent.