**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11261

Non-Argument Calendar

————————————

PONSETTA SIMMONS,

*Plaintiff-Appellant,*

*versus*

UNITED PARCEL SERVICE INC,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 3:23-cv-01128-CLS

————————————

Before GRANT, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Ponsetta Simmons raised discrimination, retaliation, and hostile work environment claims against her employer, United

Parcel Service, Inc., but she failed to offer enough evidence to support them.  We therefore affirm summary judgment for UPS.

## I.

Ponsetta Simmons has worked for UPS at its Florence, Alabama, warehouse center for over twenty years.  At one time, UPS employed three clerks at that center: a morning operations clerk, an afternoon operations clerk, and an afternoon customer counter clerk.  But that changed in the Fall of 2022.  As part of a company-wide project to reduce costs and maximize efficiencies, UPS eliminated the afternoon operations clerk position and reallocated those duties to the morning operations clerk.  That "Clerical Optimization Project" also reduced the number of clerical hours allotted to the Florence center—that is, the number of hours each day that the business manager, Charles Sims, could schedule clerical staff.

Simmons was out on leave when the Project went into effect.  So when she returned, two things had changed.  *First*, her position as the afternoon operations clerk no longer existed.  But that did not mean she was sent packing: based on seniority, she ousted a less-senior employee and filled the afternoon customer counter clerk position.  And *second*, her working hours per shift decreased from about five to three and one half—the minimum amount required by her union's collective bargaining agreement with UPS.  Accordingly, Sims told Simmons that she could not work more than that amount each day.

A few months later, Simmons filed a charge of discrimination with the Equal Employment Opportunity Commission. She expressed her belief that she had been "discriminated and retaliated against due to [her] race, African American and [her] sex, female in violation of Title VII of the Civil Rights Act of 1964." And she alleged that Sims had "harassed" her and "made racially offense comments" to her.

After the EEOC gave her the go-ahead to sue, Simmons filed a complaint in the Circuit Court of Colbert County, Alabama, raising discrimination, retaliation, and hostile work environment claims against her employer. UPS timely removed to federal court and later moved for summary judgment. The district court granted that motion, and Simmons appealed.

## II.

We review the district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable factual inferences in the nonmoving party's favor. *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024). Summary judgment is warranted when the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Simmons challenges the district court's grant of summary judgment to UPS on all three of her Title VII claims: discrimination, retaliation, and hostile work environment. Before

we get there, we consider whether the district court abused its discretion in adopting the defendant's statement of material facts.

### A.

The district court began its summary-judgment opinion by noting that Simmons failed to comply with the requirements for briefs set out in a prior scheduling order. That order required Simmons, as the nonmoving party, to respond to the moving party's claimed statement of facts in separately numbered paragraphs. It also required Simmons to specifically reference the record evidence upon which any dispute of fact is based, and warned that the failure to do so would result in the moving party's statement of facts being admitted for summary judgment purposes.

Simmons did not abide by those requirements. Her statement of facts contained "narrative summary" and "fact disputes" sections that neither tracked the defendant's statement of facts nor identified the evidentiary basis for specific disputes. The consequence? The district court adopted the defendant's statement of material facts "in full" for summary judgment purposes.

That decision was not an abuse of discretion. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009). Because Simmons failed to identify a genuine issue of material fact, the district court effectively had before it an unopposed summary-judgment motion. *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Even so, the court was obligated to review the defendant's record citations to determine whether summary judgment was warranted. *See Mann*, 588 F.3d at 1303. The court

here did just that: it "reviewed the entire record" and assessed each claim on its merits. We do the same on appeal. *See id.*

## B.

Title VII prohibits employers from intentionally discriminating against their employees because of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When employees rely on circumstantial evidence to prove Title VII claims, as Simmons does here, the *McDonnel Douglas* burden-shifting framework comes into play. *See Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). It starts with the plaintiff, who attempts to establish a "prima facie" case of discrimination, proving that she "belongs to a protected class," suffered an adverse employment action in a job that she was qualified to hold, and was treated less favorably than "'similarly situated' employees outside her class." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).

Meeting all those requirements entitles the plaintiff to a "rebuttable presumption of intentional discrimination," which the defendant can rebut by articulating a legitimate, nondiscriminatory justification for its action. *Tynes v. Florida Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). The presumption of discrimination then "falls away," and the plaintiff must show that the employer's stated reason was a pretext for unlawful discrimination. *Id.* At day's end, this framework is just another way to get at the ultimate question at summary judgment: "whether the plaintiff has put forward enough evidence for a reasonable jury to conclude that illegal

discrimination occurred." *McCreight*, 117 F.4th at 1134 (quotation omitted).

Simmons claims that her employer intentionally discriminated against her when it eliminated her position and reduced her hours. The first three elements of the prima facie case are largely undisputed on appeal; she is a member of a protected class, she suffered an adverse employment action, and she was qualified for her job. But the last requirement, which requires Simmons to identify certain "similarly situated" employees that were treated more favorably than her, is where she falls short. *Lewis*, 918 F.3d at 1218.

Simmons names Kim Tanner and Kristy Stout, both white females, as two similarly situated employees who "worked five to seven hours a day," while her hours were more limited.[1] Yet UPS provided unrefuted evidence that they those employees are not "similarly situated in all material respects" to her. *Id.* One difference is that Tanner has more seniority than Simmons, which often allows her to have first dibs when opportunities for extra work arise. Plus, Tanner performs clerical and non-clerical work, and Stout is primarily a package handler, so their job details differ from Simmons's. *See id.* at 1231.

---

[1] While Simmons identified a male comparator in her summary judgment briefing before the district court, she omitted him from her briefing on appeal. And because she does not otherwise develop an argument on appeal that relates to her sex discrimination claim, she has abandoned it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

Even so, we need not consider whether Simmons has established a prima facie case because UPS has offered a legitimate, non-discriminatory reason for the adverse employment action: the Clerical Optimization Project, which UPS implemented on a nationwide basis. Simmons did not present evidence to rebut that reason; she merely argues that Sims's "inexcusable racially discriminatory actions" show that the reason is pretextual. But nothing in the record connects those allegedly discriminatory actions to the decision to reduce her employment hours. She also emphasizes that Tanner's and Stout's hours were not equally cut—but again, she fails to account for the differences between her and those employees that explain those variations.

Simmons, in short, has not presented sufficient evidence for a reasonable jury to find that the "real reason for the employment action was discrimination." *Tynes*, 88 F.4th at 944. For that reason, we affirm the district court's grant of summary judgment to UPS on this claim.

## C.

Title VII also bars employers from discriminating against an employee because she "has opposed any practice made an unlawful employment practice" by the Act. 42 U.S.C. § 2000e-3(a). For any retaliation claim, a plaintiff needs to show that (1) "she engaged in an activity protected under Title VII," (2) "she suffered an adverse employment action," and (3) "there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

That last requirement dooms Simmons's retaliation claim. She identifies only one protected activity that she engaged in: filing a complaint with the EEOC.  No dispute there, because we have long held that filing EEOC charges qualifies as a protected activity. *See Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998).  The problem is her EEOC filing took place *after* the alleged adverse employment action occurred.[2]  So her protected activity could not possibly have caused that adverse action.  Her retaliation claim thus fails.

### D.

Title VII's anti-discrimination provision also bars employers from creating a racially discriminatory hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  To prevail on a hostile work environment claim, a plaintiff needs to show (among other things) that "the harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment." *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018).  That requirement involves both subjective and objective components. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc).  It's not enough that the employee "subjectively perceive[s] the environment to be abusive"—it must

---

[2] Simmons claims in her opening brief that the "discrimination and harassment worsened" after she filed her EEOC charge.  But she did not raise this argument to support her retaliation claim in the district court, so we do not consider it on appeal. *See Hurley v. Moore*, 233 F.3d 1295, 1298 (11th Cir. 2000).

be objectively abusive from a reasonable person's standpoint, too. *Smelter*, 904 F.3d at 1285 (quotation omitted).  Relevant factors include the conduct's "frequency" and "severity," whether it's "physically threatening or humiliating," and whether it "unreasonably interferes with the employee's job performance." *Id.* (quotation omitted).

Simmons argued before the district court that Sims created a hostile work environment, "plain and simple."  For support, she listed thirteen examples of Sims's past conduct.  Many of them bear no apparent connection to race—for example, that Sims closed off a package chute that would "lighten [her] workload."  Examples like this one are "not counted." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (quotation omitted).  The ones that do relate to race include telling "racially totally inappropriate jokes involving the Reverend Doctor Martin Luther King, Jr.," using the terms "Mammy" and "nappy," commenting that "black food smells like dead animals," and giving hats and T-shirts to white employees only.  These allegations are serious, and this conduct inappropriate.  But Simmons has not shown that Sims made those types of offensive comments frequently, nor has she made any attempt to explain how Sims's conduct interfered with her ability to perform her job. *See Smelter*, 904 F.3d at 1285.  As the district court put it, "the comments appear to be insensitive, boorish, and isolated, rather than severe or pervasive."

Simmons has not offered enough evidence for a reasonable jury to find that the environment Sims created at the UPS Florence

center was so "severe or pervasive" that it "alter[ed] the terms of her employment," so this claim cannot survive summary judgment. *Id.* at 1284.

⋆     ⋆     ⋆

We **AFFIRM** the district court's judgment.