**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-11099

————————————

ELNORIA HOWELL,

*Plaintiff-Appellant,*

*versus*

BALDWIN COUNTY BOARD OF EDUCATION,
EDDIE TYLER,
    in his individual and official capacity as Superintendent
    of the Baldwin County Board of Education,
JENNIFER SINCLAIR,
    in her individual capacity,

*Defendants-Appellees,*

MICHAEL JOHNSON,
    as board member of the Baldwin County
    Board of Education, in their official capacity,
et al.,

*Defendants.*

———————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:20-cv-00502-TFM-N

———————————————

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

PER CURIAM:

Elnoria Howell sued her employer, the Baldwin County Board of Education, and two of its administrators, Eddie Tyler and Jennifer Sinclair. Howell alleged that she faced race-based employment discrimination and retaliation. The district court determined that Howell failed to show that she faced discrimination because of her race. For the reasons that follow, we agree.

## I.  BACKGROUND

### A.  *Factual Background*

The Baldwin County Board of Education (the "Board") hired Howell, an African American woman, as a Central Office Receptionist in 2005. From 2005 to 2010, Howell was reclassified or promoted at least twice, and she received rank and salary increases in both instances. In 2012, Howell applied for a vacant Auxiliary Section Secretary position within the Human Resources Department ("HR"). HR Director Sinclair recommended Howell for the position over a white HR employee. Howell also received a pay increase. In 2014, the Board reclassified Howell to the position of Central Office Secretary.

Pertinent to this case, on June 21, 2018, Howell provided Sinclair's supervisor, Board of Education Superintendent Tyler, with a letter outlining her concerns about Sinclair's assignment of tasks within the HR Department and requesting Tyler's assistance in obtaining a workload reduction. The complaint related solely to Sinclair's assignment of tasks and made no mention of harassment, discrimination, or retaliation. Tyler tasked Assistant Superintendent Marty McRae with investigating Howell's complaint.

On June 26, 2018, Sinclair met with Howell to conduct her annual evaluation, as Sinclair had done with several HR employees during this time. Sinclair informed Howell that Sinclair would permanently assign Howell filing duties for the HR Department. Howell objected to that assignment, stating she no longer wished to be assigned filing responsibilities. Sinclair explained that another employee needed a workplace accommodation due to an injury, so she needed to reallocate some of Howell's duties to that injured employee and have Howell assume filing duties. Howell did not want to give up her currently assigned duties because she "liked what she was doing and wanted to continue to do them." Sinclair pointed out that various employees' duties had changed or expanded as a result of the decision not to replace an employee who had recently left the department.

During the annual evaluation meeting, Sinclair did not reprimand Howell. Sinclair's overall evaluation of Howell's performance indicated that Howell was meeting if not exceeding expectations. At no point during the meeting did Howell assert that she

was being singled out or treated differently than other employees, nor did she mention discriminatory treatment.

On July 3, 2018, McRae met with Sinclair regarding Howell's June 21 complaint. Until speaking with McRae that day, Sinclair had no knowledge of Howell's complaint. Because Howell's June 21 complaint made no mention of racial harassment or a hostile work environment, McRae did not discuss those issues with Sinclair. They instead discussed only the subject of the complaint—the assignment of duties. Sinclair explained to McRae that her allocation of assignments had been an ongoing effort to appropriately staff her department and distribute assignments equitably among staff members. Howell was not the only employee given additional assignments.

When Howell and Sinclair met on July 9, 2018, they revisited the subject of duty assignments, during which Sinclair presented Howell with another option, which was to assist with fingerprinting. Howell stated "she did not want to do fingerprinting because she liked what she was currently doing." Sinclair informed Howell that the only other option was to move Howell to an open Central Office Receptionist position. Howell did not want to do that either.

Also on July 9, McRae met with Howell to discuss her June 21 complaint. McRae's contemporaneous notes show that Howell discussed "a conflict" between herself and Sinclair related to the assignment of duties. Howell reiterated that she liked the duties she had been performing and did not wish to change those duties.

Howell maintains that during this meeting she told McRae that Sinclair's actions were motivated by racial discrimination, but McRae's notes reflect no such discussion and McRae denies that Howell made any such comments.

After meeting with Sinclair and Howell, McRae submitted his findings to Tyler. McRae's assessment was limited to the concerns addressed in Howell's complaint, as well as those issues that Howell and Sinclair shared with him during their meetings. McRae did not share with Tyler any concerns about racial discrimination because he states that Howell reported none.

On July 17, 2018, Tyler provided Howell the Board's response to her June 21 complaint, concluding that McRae's review identified no evidence of mismanagement in the assignment of duties.

On August 7, 2018, Tyler recommended to the Board that Howell be reassigned to the Central Office Reception position. His recommendation was based on conversations with Sinclair about Howell's unwillingness to take on different duties and finding a solution to the staffing concerns in the HR Department. Tyler had no knowledge of any race-related assertions. The Board approved the reassignment that same day. The reassignment did not entail a loss of pay, nor did it negatively impact Howell's future compensation, since she had "topped out" at the maximum pay step level within her job classification.

On August 8, 2018, Sinclair notified Howell that she was being reassigned to the Central Office Receptionist position. Howell,

6                    Opinion of the Court                    24-11099

through her attorney, notified Tyler that Howell objected to the reassignment and raised concerns about discrimination, retaliation, and a hostile work environment.

Some time shortly after, Tyler recommended to the Board that Howell's reassignment be rescinded and that she instead be transferred to the Central Office Secretary position in the Transportation Department. The Transportation Department is located in a different building on the same campus as the HR Department. Tyler made his transfer recommendation to "(1) meet the needs of a very busy HR Department, (2) appease Howell with duties and a position that [Tyler] hoped would satisfy her, and (3) allow the continued efficient operations of the school system." Sinclair was not involved in the decision to transfer Howell to the Transportation Department.

On August 10, 2018, Howell's attorney emailed Scott Lewis, counsel to the Board, regarding the proposed reassignment to the receptionist position, and the attorney raised concerns of a hostile working environment and retaliation. Lewis notified Howell's attorney that Tyler would rescind Howell's reassignment and recommend she instead be transferred to the Central Office Secretary position in the Transportation Department. That same day, Howell was formally notified of the transfer, which would result in no loss in pay.

On August 28, 2018, Howell, through her attorney, notified Tyler that Howell objected to the transfer to the Central Office Secretary position in the Transportation Department and again raised

concerns about discrimination and retaliation. That same day, the Board approved Howell's transfer and formally notified Howell the following day. Howell's pay and rank did not change. Subsequently, the Board filled the open Central Office Secretary position in the HR Department with a white female.

On October 11, 2018, Howell filed her Charge of Discrimination with the Equal Employment Opportunity Commission, asserting complaints of discrimination and retaliation.

### B. *Procedural History*

On October 13, 2020, Howell filed her original complaint with the district court, and she filed amended complaints on December 10, 2020, and February 8, 2022. Subsequently, Defendants moved for summary judgment, which the district court granted in their favor. Howell timely appealed.

## II. STANDARD OF REVIEW

We review de novo an order granting summary judgment. *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citation modified). At this stage, we view all evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Id.* (citation modified).

## III. DISCUSSION

Discerning precisely what Howell is appealing has been no small feat. The operative complaint is a classic shotgun pleading: each count incorporates by reference all preceding paragraphs, and several counts fail to specify the defendants against whom the count is asserted. Howell's briefing on appeal is afflicted with the same maladies.

As best we can tell, Howell pursues her hostile work environment claim under Title VII (42 U.S.C. § 2000e *et seq.*) because the complaint makes a passing reference to Title VII under that count. And because we so presume, we determine that the claim may be asserted against only the defendant Board and not the individual defendants Tyler or Sinclair. *See Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (noting that relief under Title VII is available against only the employer and not against individual employees); *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." (citation omitted)). For the same reason, we also construe Howell's Title VII claims premised on retaliation and failure to promote as asserted against only the Board.

Moreover, we deem various claims to be forfeited given Howell's failure to brief them on appeal. Specifically, Howell has forfeited her claims based on § 1981, failure to promote, § 1983 Equal Protection, and § 1983 Fourteenth Amendment Procedural and Substantive Due Process. *See, e.g.*, *Martin v. Fin. Asset Mgmt.*

*Sys., Inc.*, 959 F.3d 1048, 1051 n.2 (11th Cir. 2020) ("Because [the employee] failed to discuss her § 1981 claim on appeal, she abandoned it."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (noting that an issue not raised in an initial brief on appeal typically is deemed abandoned). Howell also does not challenge the dismissed Equal Pay Act claim.

Finally, the district court properly dismissed claims against Tyler in his official capacity, since Howell has named the Baldwin County Board of Education as a defendant in this case. *See, e.g.*, *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1328 (11th Cir. 2024) ("Claims against individuals in their official capacities generally represent only another way of pleading an action against an entity of which an officer is an agent, and are in all respects other than name, to be treated as a suit against the entity." (citation modified)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury."); *Walton ex rel. R.W. v. Montgomery Cnty. Bd. of Educ.*, 371 F. Supp. 2d 1318, 1324 (M.D. Ala. 2005) (holding that claims against the superintendent and board members "in their official capacities are redundant of the claims against the Board").

That leaves the following issues preserved for our consideration: (1) § 1983 – retaliation, in violation of the First Amendment, against the Board, Tyler, and Sinclair; (2) § 1983 – failure to supervise and train, in violation of the Fourteenth Amendment, against

the Board and Tyler; (3) disparate treatment under Title VII against the Board; (4) demotion under Title VII against the Board; (5) hostile work environment against the Board; and (6) retaliation under Title VII against the Board. We discuss each claim in turn.

### A.  *Howell's § 1983 Claims*

Howell's claims based on the First Amendment (retaliation) and the Fourteenth Amendment (failure to supervise and train) are untimely. "[C]onstitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, a plaintiff who files a claim under 42 U.S.C. § 1983 is subject to a two-year statute of limitations. ALA. CODE § 6-2-38(*l*); *McNair*, 515 F.3d at 1173. In general, "the statute of limitations begins to run from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (citation modified). Once the statute of limitations has expired, the action is barred, regardless of the merits of the case. *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006).

Howell filed her original complaint on October 13, 2020, alleging violations of the First and Fourteenth Amendments. We thus may consider only factual claims arising on or after October 13, 2018. Howell alleges that her disparate treatment began on April 16, 2018. This treatment continued through August 28, 2018, when the Board approved Howell's transfer to the Transportation

Department. By the end of August 2018, Sinclair was no longer Howell's supervisor. As to Tyler, Howell filed her grievance concerning Sinclair's assignment of tasks on June 21, 2018, and received a response on July 17. In early August, Tyler recommended to the Board that Howell be transferred to the Central Office Secretary position in the Transportation Department.

Put simply, at no point did Howell allege any facts that occurred on or after October 13, 2018. Indeed, when the district court asked Howell at oral argument to articulate the factual events that took place after October 2018, she asserted that the factual allegations from April through August 2018 constitute a continuing violation. To the extent that Howell relies upon the continuing violation doctrine to save her § 1983 claims, this issue is abandoned because it was not raised in the initial brief on appeal. *See Sapuppo*, 739 F.3d at 681–82. By contrast, the record shows that Defendants preserved their statute-of-limitations defense, contrary to Howell's assertions otherwise. We therefore affirm summary judgment on the § 1983 claims.

That leaves Howell's preserved Title VII claims.

### B. *Howell's Title VII Claims Against the Board*

Howell brings various race-based discrimination claims under Title VII, including disparate treatment, demotion, hostile work environment, and retaliation. Howell's claims are predicated on the same core set of alleged actions. She asserts that Sinclair treated white employees more favorably than African Americans in the terms and conditions of their employment, taking actions

including (1) scrutinizing the work of Howell and other African Americans and singling them out for clerical errors not addressed with non-African American employees; (2) counseling Howell and other African Americans for socializing during work hours and breaks creating workplace isolation, while allowing white employees to socialize during work without issue; and (3) assigning African Americans with heavy, out-of-class workload duties without salary adjustments, while giving raises and promotions to similarly situated white employees who were not assigned additional duties. Howell further asserts that she was denied training and support, excluded from important meetings and emails, subjected to harassing evaluations, and transferred to another department.

Title VII of the Civil Rights Act prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of," among other protected characteristics, the individual's race. 42 U.S.C. § 2000e–2(a)(1). A plaintiff may present either direct evidence, circumstantial evidence, or both to support a race discrimination claim. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). In evaluating Title VII claims based on circumstantial evidence at the summary judgment stage, we employ the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCreight*, 117 F.4th at 1335.

Under this framework, a plaintiff may establish a prima facie claim of race discrimination by demonstrating that: (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was

subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably. *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The last requirement is met when the plaintiff presents "evidence of a comparator—someone who is similarly situated in all material respects." *Tynes*, 88 F.4th at 944 (citation omitted). To establish a prima facie case for discriminatory demotion, a party must show she (1) was a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class. *Hinson*, 231 F.3d at 828. A retaliation plaintiff may establish a prima facie case by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

If the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its actions. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024). Once the employer meets its burden, the plaintiff has the opportunity to show that the proffered reasons were merely pretextual. *See id.* A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff can show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of

credence." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (citation omitted).

A plaintiff who cannot establish the *McDonnell Douglas* prima facie case may still defeat a summary judgment motion by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) (citation modified) (noting that a convincing mosaic can also be used to prove retaliation). A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent might be inferred; (2) "systematically better treatment of similarly situated employees"; and (3) that "the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Ultimately, we must answer the same question—whether a sufficient evidentiary basis exists for the jury to find that the employer intentionally discriminated against the plaintiff. *Tynes*, 88 F.4th at 947. "In retaliation claims, we ask whether the [employer] intentionally retaliated against the plaintiff because of the plaintiff's protected activity." *Ismael*, 161 F.4th at 762.

After reviewing the record, we agree that Howell fails to establish a genuine issue of material fact to support that Defendants intentionally discriminated or retaliated against her. We therefore affirm the grant of summary judgment on each of the Title VII claims.

### 1. Disparate Treatment (Count I)

The district court found undisputed that Howell was qualified for her job and belongs to a protected class, while assuming for argument's sake that Howell suffered an adverse employment action. But it found that Howell failed to establish proper comparators that were treated more favorably. We reach the same conclusion.

"A similarly situated comparator is an employee who engaged in the same basic conduct (or misconduct) as the plaintiff, was subject to the same employment policy, guideline, or rule, had the same supervisor as the plaintiff, and shared the plaintiff's employment or disciplinary history." *Anthony v. Georgia*, 69 F.4th 796, 805 (11th Cir. 2023) (citation modified).

Howell names six white comparators that "were all employees under Sinclair's supervision, were assigned the same job tasks and responsibilities as Howell, and/or utilized the same grievance process." But these vague generalities fail to offer specifics as to the individuals outside the protected class to show that they were similarly situated "in all material respects." *Tynes*, 88 F.4th at 944 (citation modified). Nor are we convinced that these individuals were treated more favorably. For example, at least one comparator, like Howell, filed a formal grievance against Sinclair regarding work assignments and pay, and, like Howell, her grievance was denied. And Sinclair terminated another comparator for performance-related reasons, which also undermines that Sinclair scrutinized only African American employees for their work.

Absent valid comparators, Howell can still survive summary judgment by presenting a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by Defendants. *See id.* at 946. We find that she does not. Although Sinclair allocated and occasionally reallocated specific tasks to Howell, she did so for all employees in the department as part of an ongoing response to meet then-current departmental needs and achieve operational efficiency. In addition, Howell received all pay raises that were awarded to other similarly situated employees; Howell has been promoted over white applicants; Howell's request to be relieved of certain duties has been granted; her workload has been temporarily reduced to accommodate her personal needs and circumstances; and she has been offered work assignment options that are not generally extended to other similarly situated staff members.

Howell's proposed reassignment to a vacant receptionist position within the HR department came only after Howell rejected several alternative assignments that Sinclair offered. The reassignment would not have entailed any loss of current or future compensation, nor would it have resulted in loss of opportunities for further pay increases since Howell had already "topped out" at the maximum pay step level within her job classification. And when Howell objected to the reassignment, it was promptly rescinded, thereby obviating any contention that it was adverse, discriminatory, or retaliatory in character, purpose, or effect. *See Pennington*, 261 F.3d at 1267 (noting that a proposed transfer does not consti-

tute an adverse employment action if rescinded before the employee suffers tangible harm). Following that rescission, Howell was transferred to the Transportation Department without any change in job classification or pay.

For these reasons, Howell failed to present enough evidence to raise a reasonable inference of intentional discrimination to survive summary judgment. We affirm the district court's dismissal of this claim.

### 2. Demotion (Count V)

Howell argues that her transfer from the HR Department to the Transportation Department was tantamount to a constructive demotion. Howell concedes that her classification as Central Office Secretary remained the same. But she contends that the transfer led to an assignment of duties that required substantially less responsibility, skill, education, and training than those Howell typically performed pre-transfer. Howell states that she went from performing high-functioning skills in the HR Department to filing and answering phones in the Transportation Department.

There is no dispute that Howell is a qualified member of a protected class and that a white person was hired to fill Howell's position as Central Office Secretary in the HR Department. And to defeat summary judgment, Howell need not rebut each of Defendants' proffered justifications, though demonstrating that "the employer's justification is pretextual" helps establish a convincing mosaic of discriminatory intent. *Lewis*, 934 F.3d at 1185. Even if How-

ell makes a prima facie case for discriminatory demotion, she ultimately must still "put forward enough evidence for a jury to find for the plaintiff on the ultimate question of discrimination." *Ismael*, 161 F.4th at 763 (citation modified). We hold that Howell has not done so.

Among Defendants' proffered nondiscriminatory reasons for the transfer were that Howell's workload was temporarily reduced or reassigned solely to accommodate her exigent personal circumstances, and it was only after Howell rejected several alternative assignments (within her current job classification) that she was transferred to another position. Howell has not shown "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' stated reasons sufficient to provide a legitimate ground for a reasonable factfinder to find their explanation to be unworthy of credence. *Alvarez*, 610 F.3d at 1265 (citation modified). Stated otherwise, Howell fails to show that these reasons were false and that "discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515. Coupled with Howell's failure to show that she suffered race-based disparate treatment, as we previously discussed, we find that no sufficient evidentiary basis exists for a jury to find that Defendants intentionally discriminated against Howell. *Tynes*, 88 F.4th at 947.

Defendants are entitled to summary judgment on this claim.

### 3. Hostile Work Environment (Count III)

Howell contends that Sinclair subjected her to a racially hostile, offensive, and abusive working environment. For example,

Howell's objections to increased duties purportedly were met with verbal reprimands and isolation. Additionally, Howell asserts that she experienced disparate treatment in job assignments, pay, and promotions; "was isolated at work"; was "loaded up with duties outside her classification and pay"; was "watched" and "scrutinized"; was "denied training, information, assistance and support"; "was the target of an investigation"; was "verbally counseled"; was "treated differently than her white peers"; and was "demoted, reclassified, and ultimately transferred to another department." These actions, Howell contends, reveal Sinclair's discriminatory animus. We disagree.

To establish a racially hostile work environment, a plaintiff must show that: (1) she belongs to a protected class; (2) she experienced unwelcome harassment; (3) the harassment was race-based; (4) the harassment was severe or pervasive enough to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the environment under a theory of either vicarious or direct liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Howell fails to show that any purported harassment was based on her race. *See id.* (requiring a showing that the harassment was "based on a protected characteristic of the employee"). She admits that neither Sinclair nor any other Board employee ever directed a racial slur at her or used any racially motivated language. Sinclair also never referred to Howell as incompetent or insulted

her with any name calling. More broadly, after terminating a white employee for work performance-related reasons, Sinclair promoted an African American employee into the position. In contrast, Sinclair has never recommended the termination of an African American employee.

Even if Howell had presented evidence that the incidents were racially motivated, the alleged acts considered cumulatively were too sporadic and isolated, and the totality of the circumstances was not sufficiently severe or pervasive to support her claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that "conduct must be extreme to amount to a change in the terms and conditions of employment" and that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not suffice); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc) (noting that "Title VII is not a civility code," and not all unwelcome behavior will constitute discrimination in the terms and conditions of employment).

For these reasons, Howell fails to establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive" to create a racially hostile working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation modified). Because we conclude that Howell has not presented evidence to create a genuine dispute about whether she was subjected to race-based harassment, we need not address her contention that the district court improperly applied

24-11099                Opinion of the Court                21

*McDonnell Douglas* to her hostile work environment claim. *Cf. Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1304 n.5 (11th Cir. 2023) (noting that this Court has yet to apply that framework to such a claim).

We affirm the dismissal of this claim on summary judgment.

4.  Retaliation (Count IV)

Howell alleges the following specific instances of protected activity: (1) her July 9, 2018, verbal complaint to McRae during McRae's investigation of Howell's June 21 complaint; (2) her August 8, 2023, formal discrimination complaint to Tyler; and (3) her August 10 and August 28, 2018, complaints to the Board. This protected activity, Howell contends, prompted Defendants' adverse actions. On July 2, 2018, "Sinclair initiated a permanent transfer of Employee Files to Howell," "initiated a campaign to further isolate Howell in the workplace," and subjected Howell to "an investigation." On August 7, 2018, "Howell [was] permanently assigned the added duties of File Clerk, a full-time position," and "was demoted to a Receptionist." On August 8, 2018, Sinclair "inform[ed] Howell she ha[d] been demoted to a Receptionist," and "Tyler took action to mandatorily transfer Howell out of the HR Department." On August 10, 2018, "Howell [was] served notice of Tyler's proposed mandatory transfer." On August 29, 2018, "Howell was served notice of her transfer to the Transportation [Department]."

Even if Howell mentioned discrimination when she spoke to McRae on July 9, 2018—a disputed point given contrary record evidence—much of the conduct Howell characterizes as adverse

took place *before* she vocalized her discrimination complaints to Defendants. And when an employer contemplates an adverse action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse action does not suffice to show causation. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir. 2012).

Nevertheless, if we assume a close temporal proximity between the remaining protected activities and the purported adverse actions, Howell must still establish that Defendants were "aware of the protected conduct" to satisfy the causal requirement at the prima facie stage. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Howell asserts that Sinclair's and Tyler's knowledge of Howell's protected conduct can be inferred from the close temporal proximity between Howell's protected conduct and the ensuing adverse actions. Howell also suggests that Tyler and Sinclair must have made each other aware of Howell's discrimination grievances given their interactions with each other and with Lewis, the Board's attorney, or that at the very least this is a disputed issue of fact for the jury.

"[A] jury finding that a decisionmaker was aware of an employee's protected conduct must be supported by reasonable inferences from the evidence, not mere speculation." *McCreight*, 117 F.4th at 1340 (citation modified). Tyler testified that he may have advised Sinclair that he "received [the June 21, 2018] complaint," as he would with "anybody," but that he did not discuss the complaint with her "because she was mentioned in [it]." And in any event, the

June 21 complaint made no mention of harassment, discrimination, or retaliation. Nor does the record support that Sinclair was involved in the decision to transfer Howell to the Transportation Department.

But if we were to go even further and assume that Howell presented enough evidence to establish causation at the prima facie stage, Defendants nevertheless proffered legitimate, nonretaliatory reasons for their actions. For example, Sinclair allocated and occasionally reallocated specific tasks not only to Howell but to all employees in the department as part of an ongoing response to achieve operational efficiency. And Howell's transfer was based on the Board's attempt to resolve Howell's workload-related complaints while finding a long-term solution to the staffing concerns in the HR Department.

Once an employee establishes a prima facie case and the employer articulates legitimate, nonretaliatory reasons for its actions, the employee must produce sufficient evidence for a jury to reasonably conclude that the employer intentionally retaliated against the employee *because of* the employee's protected conduct—that is, "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The question, then, is whether Howell has pointed to evidence sufficient to allow a reasonable inference of pretext and that her protected conduct was a but-for cause. *Id.*; *see also Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023) ("The but-for standard asks

whether a particular outcome would not have happened but for the purported cause." (citation modified)). We find that she has not.

Defendants' proffered reasons support that their actions were taken to meet operational needs and not to retaliate against Howell for engaging in protected activity. Nor does Howell's retaliation claim survive under a convincing mosaic analysis. "At the end of the day, a retaliation plaintiff's mosaic of evidence must still be enough to allow a reasonable jury to infer but-for causation." *Yelling*, 82 F.4th at 1342 (citation modified). Howell's evidence is insufficient to allow that inference, and the district court properly granted summary judgment on this claim.

## IV. CONCLUSION

We **AFFIRM** the district court's order granting summary judgment to Baldwin County Board of Education, Eddie Tyler, and Jennifer Sinclair.